Elaine R. BOX et al.

v.

**Robert F. WALKER and Maine Coast Regional Health Facilities, d/b/a Maine Coast Memorial Hospital.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1982.

Decided Jan. 6, 1983.

Rudman & Winchell, Paul W. Chaiken (orally), Bruce C. Mallonee, Bangor, for plaintiffs.

Vafiades, Brountas & Kominsky, Susan R. Kominsky (orally), Bangor, for Walker, M.D.

Gross, Minsky, Mogul & Singal, Carl F. Rella (orally), George Z. Singal, Bangor, for Me. Coast Reg. Health Facility.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

McKUSICK, Chief Justice.

Plaintiffs, Elaine R. Box and her husband Melvin J. Box, Jr., appeal from an order of the Superior Court (Waldo County) dismissing their joint malpractice action against a physician and a hospital. The Superior Court found, on the authority of *Tantish v. Szendey*, 158 Me. 228, 182 A.2d 660 (1962), that the actions, involving an unsuccessful sterilization procedure performed on Mrs. Box, were barred by the applicable two-year statutes of limitations, 14 M.R.S.A. § 753 (1980) (physicians) and 24 M.R.S.A. § 2902 (Supp.1982) (hospitals).[1] Relying upon *Myrick v. James*, 444 A.2d 987 (Me. 1982) (discovery rule applied to foreign object malpractice cases), plaintiffs argue that the relevant statutes of limitation do not bar their actions because their causes of action did not accrue until they discovered that Mrs. Box was pregnant. Plaintiffs further argue, on the authority of *Williams v. Ford Motor Co.*, 342 A.2d 712 (Me.1975), that in any event Mr. Box's cause of action did not accrue until Mrs. Box became pregnant and he suffered loss of consortium and became liable for medical and child-rearing expenses because until that time he had sustained no damages as a result of defendants' actions. We deny the appeal.

*Background*

On December 22, 1978, Robert F. Walker, M.D., performed a tubal ligation, for the

---

1. Under both 14 M.R.S.A. § 753 and 24 M.R.S.A. § 2902, actions must be commenced "within two years after the cause of action accrues." Both of those statutes were in effect at all times here relevant.

purpose of sterilization, on Elaine R. Box at Maine Coast Memorial Hospital (the hospital) in Ellsworth. On May 20, 1981, Mrs. Box learned that she was pregnant.[2] In November of 1981, Mrs. Box and her husband filed a malpractice action against Dr. Walker, and also against the hospital on the theory of *respondeat superior.* In their complaint Mrs. Box sought damages for "pain and suffering, medical expenses, and inconvenience," including child-rearing expenses, resulting from Dr. Walker's allegedly negligent performance of the sterilization procedure. Her husband claimed damages for loss of consortium, medical expenses for his wife and child, and child-rearing expenses, resulting from Dr. Walker's allegedly negligent performance of the sterilization procedure and his allegedly negligent failure to inform the Boxes of the risks involved in tubal ligations and of alternative methods for achieving sterilization. Both defendants filed motions to dismiss, putting forth the affirmative defense that plaintiffs' suits were barred by the relevant statutes of limitations. On April 21, 1982, the Superior Court dismissed the Boxes' action, citing the applicable statutes of limitations and *Tantish v. Szendey, supra.* Plaintiffs now appeal.

### Discussion

As the principal thrust of their appeal, plaintiffs urge the Law Court to extend the discovery rule adopted in *Myrick v. James, supra,* to malpractice cases involving faulty sterilization procedures. *Myrick* held that a malpractice cause of action against a surgeon for negligently leaving a foreign object in the patient's body does not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the existence of the negligent behavior. Plaintiffs argue that under a discovery rule the statutes of limitation would not preclude their action because they could not have discovered that the tubal ligation was unsuccessful until Mrs. Box became pregnant and because they did file their actions within two years of that time.

2. Mrs. Box later gave birth to a healthy child.

■ Plaintiffs' claim for applying a discovery rule to their surgical malpractice case must fail at the threshold. In *Myrick,* as recently as May 4, 1982, this court carefully reviewed the policy considerations involved in deciding the extent to which that new rule would be applied in other surgical malpractice cases. Although one may classify as dictum all that this court there said as to the application of the newly declared discovery rule beyond the *Myrick* case itself, one cannot have any doubt of the care with which the court made its decision. After setting forth the reasons for giving the Myricks "the fruit of their victory" in obtaining a change in the law, this court declared:

> [I]n adopting the new rule, we invoke our inherent authority to make the change in all other respects prospective.

*Myrick v. James, supra* at 1001–02 (footnote omitted). This court noted:

> In our past cases we have assessed the existence of substantial reliance interests as an abstract proposition. [Citations omitted] Doing so here, one may legitimately think it likely that there has been substantial public reliance upon the former rule and little ability of litigants to foresee the change in the law accomplished by this opinion.

*Id.* at 1002 (footnote omitted). The court then concluded with a comprehensive policy statement in regard to effective date for the judicial adoption of a discovery rule in medical malpractice cases generally:

> Accordingly, except for its application to the parties in this case, the discovery rule shall be applied only to acts of alleged malpractice occurring in the course of surgical procedures taking place on the date of this opinion [*i.e.,* May 4, 1982] and thereafter.

*Id.* We find in the present case, which involves a surgical procedure that occurred long before May 4, 1982, nothing unique to change our judgment deliberately arrived at on May 4, 1982, that the then newly pronounced discovery rule would apply only

to surgical malpractice on and after that date. Institutional integrity demands that we respect that recent decision. The date of May 4, 1982, is established as the earliest date of a surgical procedure to which a discovery rule will be applied. Whether the discovery rule will be applied to malpractice occurring under circumstances other than those of the *Myrick* case we leave open for future case-by-case adjudication.

■ Plaintiff husband separately argues that regardless of the applicability of *Myrick* to his case, his cause of action did not "accrue" until his wife became pregnant because until that point Dr. Walker's alleged negligence had not resulted in injury to him. *See Williams v. Ford Motor Co., supra* at 718. Mr. Box insists that his is an independent, not a derivative, action and that he was injured only when Mrs. Box became pregnant and he then suffered loss of consortium and faced medical and child rearing expenses. To resolve the case at bar, it is not necessary to decide whether Mr. Box's claim is derivative or independent, because on either premise his claim is barred. If Mr. Box's claim is derivative, flowing only from the injury caused to Mrs. Box, it is subject to the statute of limitations defense against his wife's primary claim. *Cf. Barlow v. Lowery,* 143 Me. 214, 59 A.2d 702 (1948) (father's claim for expenses and loss of minor's services). If Mr. Box's claim is independent, it still arose at the time of the surgical procedure. An independent cause of action accrues when the plaintiff is damaged by the negligent conduct of the defendant; the law will imply nominal damages from any violation of the plaintiff's rights. *See Williams v. Ford Motor Co., supra* at 714–15. If the tubal ligation was negligently performed, Mr. Box's rights were violated at the time of the surgery by the breach of a duty owed directly to him to perform the sterilization with reasonable competence in order thereafter to permit him full consortium with his wife, free of the possibility of his wife's pregnancy and the consequences flowing to him therefrom. As distinguished from the injured passenger in *Williams,* who had his first relevant relationship with Ford Motor Company when he rode in a car of its manufacture, Mr. Box had a legally protected interest in the successful sterilization of his wife from a time prior to its performance. Therefore, since the law implies nominal damages for any violation of a plaintiff's rights, the husband's cause of action, even if independent, arose at the same time as his wife's, when the tubal ligation was performed, and is equally barred.

The entry must be:

Dismissal of the action by the Superior Court affirmed.

GODFREY and VIOLETTE, JJ., concurring.

NICHOLS and ROBERTS, Justices, concurring.

We concur in the result reached by the Court. We respectfully disagree, however, with the route chosen by the Court to reach that result. In *Myrick v. James,* 444 A.2d 987 (Me.1982), we decided that the discovery rule would be applied to a case involving foreign-object surgical malpractice and to similar cases arising after that decision. We there expressed concern for uniformity and certainty in the application of legal doctrine. We would better meet the concern expressed in *Myrick* by addressing in the case before us the question of extending the discovery rule to negligently performed sterilization procedures. We need not leave that question open for later adjudication. The issue is squarely before us, fully briefed and argued. We can, and we should, decide it. Unfortunately, the Court here chooses to leave uncertain the scope of *Myrick* until presented with conduct occurring after *Myrick.*

We join in the result in this case because we accept as the considered judgment of the Court in *Myrick* that the application of the discovery rule would be prospective. In weighing the retroactivity *vel non* of its decision to overrule *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), the *Myrick* Court confronted complex principles of the judicial process. The Court tempered the

impact of its overruling decision by one of several possible methods. That we accept the result does not mean that we endorse the method. We should continue in the future to consider other means of dealing with the temporal application of the rule of a case.