## Gail G. MUSK

### v.

## Nancy H. NELSON.

Supreme Judicial Court of Maine.

Argued Feb. 28, 1994.

Decided Sept. 29, 1994.

Arlyn H. Weeks (orally), J. Michael Conley, Conley, Haley & O'Neil, Bath, for plaintiff.

Joy Cantrell (orally), Berman & Simmons, P.A., Lewiston, for defendant.

Before WATHEN, C.J., GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ., and COLLINS, A.R.J.*

RUDMAN, Justice.

Gail G. Musk appeals from the judgment entered in the Superior Court (Lincoln County, *Perkins, A.R.J.*) granting Nancy Nelson's

---

* Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

motion to dismiss her claim based upon a failed sterilization as barred by the statute of limitations. Musk, *inter alia,* contends (1) that section 2931 of title 24 of the Maine Revised Statutes Annotated creates a cause of action for a failed sterilization, 24 M.R.S.A. § 2931 (1990) (Wrongful life/wrongful birth); that is distinct from other actions for professional negligence, 24 M.R.S.A. § 2902 (statute of limitations for professional negligence); (2) that the statute of limitations for actions for professional negligence permits us to expand judicially the limited discovery rule provided in the statute; and (3) that if we interpret the statute of limitations to bar her claim, then the statute will violate her constitutional rights to due process and equal protection. We disagree with all of Musk's contentions and affirm the judgment of the Superior Court dismissing Musk's claim as barred by the applicable statute of limitations.

On February 15, 1989, Nelson performed a tubal ligation on Musk. Nearly three years later, Musk learned that she was pregnant. Musk formally notified Nelson of her claim for the failed sterilization on March 5, 1992—more than three years after the procedure was performed. A few months later, Musk gave birth to a healthy son.

## I. Professional Negligence

■ Musk first argues that an action for wrongful sterilization is not an action for professional negligence, and therefore is not barred by the statute of limitations applicable to such actions. Musk relies on the interplay of several sections of the Maine Health Security Act. 24 M.R.S.A. §§ 2501–2961 (1990) (enacted by P.L.1985, ch. 804). *See* 24 M.R.S.A. § 2502(6) ("Action for professional negligence"); *id.* § 2902 ("Statute of limitations for health care providers and health care practitioners"); *id.* § 2931 ("Wrongful birth; wrongful life").[1] Musk contends that her action based on a failed sterilization is *not* an action for professional negligence under the Act, *id.* § 2502(6), because it is an action for damages allowed by the Wrongful Birth/Life Statute, *id.* § 2931(2). Therefore, says Musk, her action is not subject to the three-year statute of limitations applicable to actions for professional negligence. *Id.* § 2902.

■ This argument is not persuasive. The Wrongful Birth/Life Statute does not create a cause of action. On the contrary, it repudiates certain types of actions, and limits available damages for other, related actions.

1. 24 M.R.S.A. § 2502(6) (1990): **Action for professional negligence**

"Action for professional negligence" means any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services. 24 M.R.S.A. § 2902 (1990): **Statute of limitations for health care providers and health care practitioners**

Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury. Notwithstanding the provisions of Title 14, section 853, relating to minority, actions for professional negligence by a minor shall be commenced within 6 years after the cause of action accrues or within 3 years after the minor reaches the age of majority, whichever first occurs. This section does not apply where the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should have discovered the harm. For the purposes of this section, the term "foreign object" does not include a chemical compound, prosthetic aid or object intentionally implanted or permitted to remain in the patient's body as part of the health care or professional services.
[second paragraph discussing alternative statute of limitations for minors omitted]
In part 24 M.R.S.A. § 2931 (1990): **Wrongful birth; wrongful life**
1. **Intent.** It is the intent of the Legislature that the birth of a normal, healthy child does not constitute a legally recognizable injury and that it is contrary to public policy to award damages for the birth and rearing of a healthy child.
2. **Birth of healthy child; claim for damages prohibited.** No person may maintain a claim for relief or receive an award for damages based on the claim that the birth and rearing of a healthy child resulted in damages to him. A person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy.

The statute establishes a general rule that actions based on the birth of a healthy child are contrary to public policy, and provides for a limited exception to that rule:

A person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings of the mother during pregnancy.

*Id.* § 2931(2). This provision is not a provision for strict liability, as suggested by Musk.

Even if it were a basis for strict liability, it would still fall within the definition of an action for professional negligence under the Act. *Id.* § 2502(6). The Wrongful Birth/Wrongful Life provision, the section defining professional negligence, and the statute of limitations were all enacted as part of a package—the Maine Health Security Act. 24 M.R.S.A. §§ 2501–2961 (1990) (enacted by P.L. 1985, ch. 804). The sections must be read together. *Givertz v. Maine Medical Center,* 459 A.2d 548, 554 (Me.1983).

The Act's definition for professional negligence encompasses "any action for damages ... against a health care provider, its agents or employees, ... *whether based on tort or breach of contract or otherwise* ...." 24 M.R.S.A. § 2502(6) (emphasis added). Strict liability is a tort theory. *See* Restatement (Second) of Torts § 402A (1965) (strict liability). In any event, the language "or otherwise" shows that the Legislature wanted its new act to occupy the field with regard to actions against health care providers. The Act sought to control the cost of medical malpractice insurance. *See* L.D. 2065, Statement of Fact (112th Legis.1985). Therefore, we hold that an action for a failed sterilization is an action for professional negligence as defined in the Maine Health Security Act.

## II. The Discovery Rule

■ Section 2902, the Act's statute of limitations, provides that an action for professional negligence against health care providers accrues "on the date of the act or omission giving rise to the injury," except in cases based on the leaving of a foreign object in the patient's body when the cause of action accrues when the patient discovers or reasonably should discover the harm. 24 M.R.S.A. § 2902. Musk argues that section 2902 does not preclude us from expanding the discovery rule to encompass failed sterilizations. When a statute already defines accrual, however, we are not free to re-define the term. *Anderson v. Neal,* 428 A.2d 1189, 1191 (Me.1981) ("absent explicit legislative direction," definition of accrual in general statute of limitations left to the Court).

■ The question we must answer is whether the Legislature intended to preclude the availability of the discovery rule in cases where no foreign object is left inside the patient's body. *See McAfee v. Cole,* 637 A.2d 463 (Me.1994). We look first at the plain language of the statute to determine whether the legislative intent is plain and unambiguous. *In re James John L.,* 601 A.2d 630, 631 (Me.1992). The Maine Health Security Act Statute of Limitations states:

Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury.... This section does not apply where the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should discover the harm. For purposes of this section, the term "foreign object" *does not include a chemical compound, prosthetic aid or object intentionally implanted or permitted to remain in the patient's body as part of the health care or professional services.*

24 M.R.S.A. § 2902.

Musk argues that the plain language betrays no clear intent to preclude any use of the discovery rule in non-foreign-object cases; the statute provides an exception to the non-availability rule but does not explicitly rule out other exceptions. However, a well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed.

*Wescott v. Allstate Ins.,* 397 A.2d 156, 169 (Me.1979) ("expressio unius est exclusio alterius"). The statute provides a single exception and implicitly denies the availability of any other.

If there be doubt, the statutory history settles the matter. *State v. Edward,* 531 A.2d 672, 673 (Me.1987) (if a statute is ambiguous, we look to the history). The intent to bar the use of the discovery rule in non-foreign-object cases is clear in both the statement of fact accompanying the original legislative document and the statement of fact accompanying the revised version: "The new draft amends the existing statutes of limitations applicable to medical malpractice actions by ... [e]liminating the so-called 'discovery rule'. in all cases except 'foreign object' surgical cases." L.D. 2400 Statement of Fact (112th Legis.1985) (revised draft); *see also* L.D. 2065 Statement of Fact (112th Legis.1985) (original bill expressing same intent).

Since the purpose of the Act was to reduce malpractice insurance premiums, this limitation of the discovery rule is logical. *See* L.D. 2065 Statement of Fact (112th Legis.1985). *See also Eastern of Maine, Inc. v. Vintners Group Ltd.,* 455 A.2d 936, 941 (Me.1983) (construe statute to achieve legislative purpose). Also, the Maine Health Security Act was passed in 1985, two years after our decision in *Box v. Walker,* 453 A.2d 1181 (Me.1983). In *Box,* we expressly left open the question whether the recently created judicial discovery rule would apply to actions based on professional negligence involving no foreign object. *Id.* at 1182–83 (referring to *Myrick v. James,* 444 A.2d 987, 996 (Me. 1982)). The Maine Health Security Act answers the question; the discovery rule is limited to foreign object cases alone. The Legislature is presumed to be aware of the state of the law and decisions of this Court when it passes an act. *Realco Servs., Inc. v. Halperin,* 355 A.2d 743, 745–46 (Me.1976). In sum, even if we were to agree with Musk that distinguishing foreign object cases from failed sterilization is bad public policy, we must defer to the Legislature's intent. *National Hearing Aid Centers, Inc. v. Smith,* 376 A.2d 456, 461 (Me.1977) ("No matter how much the court might have preferred some other procedure, if the measure is reasonably appropriate to accomplish the intended purpose, we must give it effect.").

### III. The Constitution

■ Musk finally makes various constitutional contentions. She argues that if the Court interprets the statute of limitations to bar her claim, she will be unconstitutionally denied a remedy for her injury, Me.Const. Art. I, § 19. To be found unconstitutional, an act must impose "time limits so unreasonable as to deny meaningful access to the judicial process." *Maine Medical Ctr. v. Cote,* 577 A.2d 1173, 1176 (Me.1990) The Maine Health Security Act's statute of limitations is not a denial of access to judicial process. *Choroszy v. Tso,* 647 A.2d 803, 806–07 (Me.1994).

■ Musk also argues that the Act violates her right to due process and equal protection, Me.Const. Art. I, § 6–A, by irrationally distinguishing unsuccessful sterilization cases from those involving a foreign object. The success of an equal protection challenge hinges on the standard of review. *Id.* at 807. Although Musk invokes her status as a pregnant woman, the statute is gender neutral on its face. *See State v. George,* 157 Vt. 580, 602 A.2d 953, 956 (1991). Therefore, to satisfy the Equal Protection Clause the statute need only have a rational relationship to a legitimate goal. Limiting the availability of the discovery rule bears a rational relationship to the Legislature's goal to reduce malpractice insurance premiums and control the cost of health care. *Choroszy v. Tso,* 647 A.2d at 808. For the same reason, the statute also satisfies the requirements of due process. *Tri–State Rubbish, Inc. v. Town of New Gloucester,* 634 A.2d 1284 (Me.1993) (citing *Town of Boothbay v. National Advertising Co.,* 347 A.2d 419, 422 (Me.1975)).

Musk's other contentions are without merit.

The entry is:

Judgment affirmed.

WATHEN, C.J., and CLIFFORD and COLLINS, JJ., concurring.

DANA, Justice, with whom GLASSMAN, Justice, joins, dissenting.

I respectfully dissent.

The Court misperceives the legislative intent. In 1990 the Legislature defined an action "for professional negligence" as "any action for damages for injury or death against any health care provider," 24 M.R.S.A. § 2502(6) (1990), and that such an action accrues "on the date of the act or omission giving rise to the injury." *Id.* § 2902. Simultaneously, it announced that "the birth of a normal, healthy child does not constitute a legally recognizable injury," *id.* § 2931(1), but that "[a] person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child...." *Id.* § 2931(2). Since, by its terms, the birth of a healthy child is not an injury, an action for a failed sterilization procedure is not an action "for professional negligence" within the meaning of section 2502(6). It need not be brought within three years of the "omission giving rise to the" birth of a healthy child.

Interpreting the Legislature's intent as I do avoids a constitutional problem with the Court's opinion. On February 5, 1992, Musk learned she was pregnant. Requiring her to commence an action for professional negligence before February 15, 1992, the third anniversary of a failed sterilization procedure, would seem to define an unreasonably short period "within which a claimant must seek redress in the courts." Me. Const. art. I, § 19. *Maine Medical Ctr. v. Cote,* 577 A.2d 1173, 1176 (Me.1990).

In *Choroszy v. Tso,* 647 A.2d 803, 807 (Me. 1994), we held that it was not unconstitutional to require a person who received faulty medical advice concerning a medical condition with adverse and continuing symptoms to bring his action within three years of that advice. Such a holding does not preclude a contrary holding when a plaintiff must file her action within ten days of her first symptoms.

I would vacate the decision of the Superior Court.