2005 ME 47

**A. Holmes STOCKLY et al.**

v.

**Aynne M. DOIL et al.**

Supreme Judicial Court of Maine.

Argued Jan. 11, 2005.

Decided: April 5, 2005.

Juliet T. Browne, Esq. (orally), Scott W. Boak, Esq., Verrill Dana, LLP, Portland, for plaintiffs.

James B. Haddow, Esq. (orally), Petruccelli, Martin & Haddow, LLP, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Aynne M. Doil appeals and A. Holmes and Doris Stockly cross-appeal from a judgment of the Superior Court (Cumberland County, *Humphrey, C.J.*) finding Doil liable pursuant to both 14 M.R.S.A. §§ 7552[1] and 7552–A[2] (2003). Doil asserts that the court erred by finding her liable pursuant to both statutes and by awarding attorney fees to the Stocklys. The Stocklys argue that the court erred by: (1) determining that the stumpage value of the lost trees was the proper measure of damages pursuant to 14 M.R.S.A. § 7552–A; and (2) reducing Doil's responsibility for damages pursuant to 14 M.R.S.A. § 7552(3)(B). Because the trial court erred by holding Doil liable under section 7552 and failed to consider the Stocklys' claim of restoration costs, we vacate the judgment.

## I. CASE HISTORY

[¶ 2] The case was presented on stipulated facts. The Stocklys own approximately twenty acres of undeveloped land

---

1. Title 14 M.R.S.A. § 7552(3) (2003) states:

   A. When agricultural or forest products have been destroyed or carried away, the owner may recover as damages either the value of the lost products themselves or the diminution in value of the real estate as a whole resulting from the violation, whichever is greater.
   B. For lost trees, the owner may claim in lieu of market value the forfeiture amounts determined in Title 17, section 2510, subsections 2 and 3. In addition, the owner's damages may include the costs for regeneration of the stand in accordance with Title 12, section 8869. The court may reduce the damages awarded for good cause shown when the cutting of trees was done negligently or without fault.
   *Id.*

2. Title 14 M.R.S.A. § 7552–A (2003) states:

   Any person who authorizes the cutting of timber or wood on the person's own property, when the cutting involves an area of 10 or more acres, shall clearly mark any property lines that are within 200 feet of the area to be cut. If any such person fails to clearly mark such property lines and if the person or persons who are authorized to cut then cut timber or wood on abutting land without the authorization of the owner of that land, the person who failed to mark the person's property lines is liable in a civil action, in double damages, to that owner of the abutting land. These damages are in addition to any damages to which the owner of the abutting land may be entitled under section 7552.
   *Id.*

in Falmouth. Doil owns land abutting the Stocklys' property. Neither Doil nor the Stocklys developed or cleared their properties prior to the spring of 2001. Both properties were naturally forested with a mix of mature hardwoods and softwoods.

[¶ 3] In the spring of 2001, Doil engaged Matthew McCourt to "conduct a selective harvest of timber" on her property. McCourt helped Doil obtain authorization for the cutting from the Department of Conservation. McCourt also assisted Doil in obtaining a copy of the tax map of her property. Doil understood that McCourt wanted the tax map so that he could determine the boundary of her property. The boundary line between the Stockly and Doil properties is impossible to locate on the face of the earth based exclusively on information provided in the tax map. McCourt agreed to indemnify Doil in the event that the cutting resulted in trespass and tree cutting to any land she did not own. The indemnification provision in the agreement was "important" to Doil because she "just wanted to make sure that [she] wasn't liable for anything that might ... happen." Doil did not authorize or direct McCourt to cut any trees located on the Stockly property.

[¶ 4] Stonewalls mark the boundary between the western and southern edge of the Stocklys' property and the eastern edge of Doil's property. The eastern, northern, and southern edges of the Stocklys' property, abutting Doil's property, had been surveyed and flagged by the Stocklys prior to the spring of 2001. No other markers indicated the boundary between the two properties.

[¶ 5] Doil was aware that McCourt had walked on her property and that he had identified the stonewall boundaries on at least one edge of the property. Doil believed that McCourt had the information he needed to determine the boundary of her property. Doil failed to mark her property line. The

boundaries and therefore concedes liability under section 7552–A.

[¶ 6] During the spring and summer of 2001, McCourt cut trees on thirty acres of Doil's property and on twenty acres of the Stocklys' property. The Stocklys lost approximately 725 trees as a result of the cutting. Most of the trees that were cut on the Stocklys' property were large hardwoods and softwoods. The Stocklys did not authorize the cutting and were not aware of it until after it occurred. McCourt paid Doil $17,000 to $18,000 for the trees cut.

[¶ 7] The trees cut on the Stocklys property had a fair market or "stumpage value" of $14,127.30. The forfeiture value of the trees, pursuant to 17 M.R.S.A. § 2510(2) (1983 & Supp.2004), was $59,525.49. The Stocklys assert and Doil concedes, "the cost to clean up the debris and slash left behind from the timber harvesting would be: $35,750." To restore the property would cost approximately $370,000. The cutting did not have a significant impact on the fair market value of the Stocklys' property. The Stocklys contend, however, that their property was ninety-five percent clear-cut and is now of little or no value to them, as they are no longer able to use it for recreational purposes.

[¶ 8] The Stocklys commenced an action against Doil and McCourt seeking damages for (1) breach of statutory duties pursuant to 14 M.R.S.A. §§ 7552 and 7552–A; (2) negligence; (3) nuisance; and (4) negligent infliction of emotional distress. Doil filed a cross-claim seeking indemnification from McCourt. McCourt failed to appear and a default judgment was entered against him. The Superior Court granted the Stocklys' motion for a summary judgment with respect to Doil's liability under 14 M.R.S.A. § 7552–A, for failure to mark her property line. The

remainder of the case was submitted to the Superior Court to decide based on the stipulated facts.

[¶ 9] The Superior Court entered a judgment in favor of the Stocklys, (1) finding Doil responsible for damages of $28,254.60, or double the "stumpage value," pursuant to 14 M.R.S.A. § 7552–A, for failing to mark her property line; and (2) finding Doil and McCourt responsible for damages of $119,050 (double the forfeiture value of the trees), pursuant to 14 M.R.S.A. § 7552, for negligently cutting, destroying, damaging, and carrying away trees from land without the property owner's permission. Although the court initially found McCourt and Doil jointly responsible for damages in the amount of $119,050, it then reduced Doil's responsibility to $35,750 pursuant to 14 M.R.S.A. § 7552(3)(B) (2003).[3] The Stocklys were awarded $45,000 in attorney fees and $1537 in other costs pursuant to section 7552(5). Doil appealed and the Stocklys cross-appealed.

## II.  LEGAL ANALYSIS

### A.  Liability

[¶ 10] The Superior Court applied RESTATEMENT (SECOND) OF TORTS § 413 (1965) to establish Doil's liability for McCourt's trespass.[4] However, we have never recognized RESTATEMENT (SECOND) OF TORTS § 413 as

the law in Maine, *see Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169, 172 ("We are far less certain whether and under what circumstances we would recognize the doctrine variously described as involving 'a peculiar unreasonable risk.' "), nor do we recognize it now. In addition to the doubt we expressed about the language of RESTATEMENT (SECOND) OF TORTS § 413 in *Dexter*, 1998 ME 195, ¶ 10, 715 A.2d at 172, the plain language of 14 M.R.S.A. § 7552 indicates the Legislature's intention to occupy the field entirely and to limit liability under 14 M.R.S.A. § 7552 to the person who actually commits a trespass or a person liable for their independent contractor's trespass under the narrow circumstances articulated in *Bonk v. McPherson*, 605 A.2d 74, 79 (Me. 1992).[5]

[¶ 11] "[W]e look first to the plain meaning of statutory language as a means of effecting legislative intent. Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as people of common intelligence would usually ascribe to them." *S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 15, 868 A.2d 210, 216 (citation omitted). The plain language of 14 M.R.S.A. § 7552 simply provides that "a person" may not "cut down" someone else's trees and that "a person" who violates this prohibition is liable to the owner of those trees.[6] Noth-

---

3. Section 7552(3)(B) states that, "[t]he court may reduce the damages awarded for good cause shown when the cutting of trees was done negligently or without fault."

4. Doil does not dispute that she is liable pursuant to 14 M.R.S.A. § 7552–A for failing to mark her property line.

5. "[A] party can be held liable for the trespass of an otherwise independent contractor if the trespass was [1] authorized as part of the contract, [2] or was the natural result of the work contracted to be done, [3] or the trespass was somehow directed or part of a common purpose, or [4] the trespass was rati-

fied." *Bonk v. McPherson*, 605 A.2d 74, 79 (Me.1992) (citation omitted).

6. The statute at issue provides, in relevant part:

2. Prohibitions. Without permission of the owner *a person* may not:
A. Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own; or
. . . .
4. Damages recoverable. Damages are recoverable as follows.

ing in this statute indicates that the language "a person" and "cut down" was intended to also include one who engages an independent contractor to cut down someone's trees for 14 M.R.S.A. § 7552–A already creates such liability.

[¶ 12] Although it is unnecessary to look at the legislative history because the plain language elucidates the Legislature's intent, we note that the history supports the intent stated in the plain language. The legislative history of section 7552 and its subsequent amendments support the conclusion that liability should be limited to the person who *actually* commits a trespass or, at most, a person who has assumed the liability for their independent contractor's trespass under the narrow circumstances articulated in *Bonk*, 605 A.2d at 79.

[¶ 13] In 1977, the Legislature amended 14 M.R.S.A. § 7552 and repealed and replaced § 7552–A. P.L.1977, ch. 313, §§ 1–2 (effective October 24, 1977). The statement of fact accompanying these amendments provided:

> This new draft clarifies the purpose of the original bill. It increases the damages for which the *trespasser himself* is liable, in section 1 of the new draft. Section 2 of the new draft clarifies the law with regard to the *landowner who authorizes cutting*, but fails to mark his

property lines, with the result that timber is cut on the abutting owner's land. L.D. 1816, Statement of Fact (108th Legis.1977) (emphasis added). Over the course of the next decade a number of amendments,[7] not bearing on issues relevant to this case, were made to section 7552 until in 1989 it read:

> *Whoever cuts down*, destroys, injures or carries away any ... timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not that person's own, without license of the owner, or injures or throws down any fences, bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If such act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the costs of any professional services necessary for the determination of damages, for the attorney's fees, and for court costs.

14 M.R.S.A. § 7552, *amended by* P.L.1989, ch. 555, § 13 (effective September 30, 1989) (emphasis added). In 1992, we applied this version of 14 M.R.S.A. § 7552 in *Bonk*, 605 A.2d at 76–77. We concluded that 14 M.R.S.A. § 7552 was ordinarily applicable only to the actual trespasser and that liability may extend back to an employer for the trespass of his indepen-

---

A. *A person* who negligently or without fault violates subsection 2 is liable to the owner for 2 times the owner's damages as measured under subsection 3 or $250, whichever is greater.
B. *A person* who intentionally or knowingly violates subsection 2 is liable to the owner for 3 times the owner's damages as measured under subsection 3 or $500, whichever is greater.
C. In addition to the damages recoverable under paragraphs A and B, *a person* who violates subsection 2 is also liable to the owner for the costs the owner may incur if the violation results in a violation of any

federal, state or local law or ordinance and, as a result, the owner becomes the subject of an enforcement proceeding. These costs include attorney's fees, costs and the value of the owner's time spent on involvement in the enforcement proceeding.
14 M.R.S.A. § 7552(2), (4) (2003) (emphasis added).

7. P.L.1983, ch. 362, § 2 (effective September 23, 1983); P.L.1983, ch. 507, § 7 (effective September 23, 1983); P.L.1983, ch. 816, A, § 5 (effective April 24, 1984); P.L.1989, ch. 555, § 13 (effective September 30, 1989).

dent contractor only under the narrow circumstances discussed in *Bonk*.

[¶ 14] In 1995, 14 M.R.S.A. § 7552 was repealed and replaced by P.L.1995, ch. 450, § 2 (effective September 29, 1995) (codified at 14 M.R.S.A § 7552).[8] "The Legislature is presumed to be aware of the state of the law and decisions of this Court when it passes an act." *Musk v. Nelson*, 647 A.2d 1198, 1202 (Me.1994). It should also be presumed that if our holding in *Bonk*, 605 A.2d at 79, was not in accord with legislative intent, the Legislature would have expanded the language of 14 M.R.S.A. § 7552 to encompass persons other than those who actually commit the trespass. It did not. The plain language of the current version of 14 M.R.S.A. § 7552 is completely consistent with our holding in *Bonk*, 605 A.2d at 79, and in fact, the new language is at least as narrow, if not narrower, than the previous language.[9] As such, we should consider that to be legislative confirmation of our interpretation in *Bonk*, 605 A.2d at 79, and continue to apply that standard.

[¶ 15] *Bonk* provides that under certain limited circumstances:

> a party can be held liable for the trespass of an otherwise independent contractor if the trespass was [1] authorized as part of the contract, [2] or was the natural result of the work contracted to be done, [3] or the trespass was somehow directed or part of a common purpose, or [4] the trespass was ratified.

*Bonk*, 605 A.2d at 79 (citation omitted). When the *Bonk* test is applied, the record does not support a finding of any of the grounds necessary to establish Doil's liability for the acts of her subcontractor. The contract between Doil and McCourt provided:

1. [T]hat the Seller agrees to sell to the Buyer, upon the terms and conditions hereinafter, stated, the merchantable timber on the property in Falmouth, County of Cumberland, State of ME, as described in deed recorded in the Cumberland County Registry of Deed[s] in Book 3696, Page 329, Tax Map R04, Lot # 20, 22, 21–B, 19. For purposes of this agreement, the term "merchantable timbers" shall mean all of the species of trees having a diameter of 12 inches measured on the stump.

2. The Seller stipulates that (s)he is the sole owner of the said tract of land and has the full right and power to dispose of the timber in the manner specified herein.

3. The Seller further agrees to allow the Buyer, his agents, employees, independent logging contractors, trucks, skidders, and other equipment necessary to enter upon the above-described premises for the purposes of cutting and removing therefrom such timber as is included in the terms of this contract.

4. Unless an extension of time is given in writing, all timber shall be cut and removed by 7/30/01.

5. The Buyer shall assume all responsibility for the cutting of wood on adjacent properties and shall indemnify and hold the Seller harmless from all claims of

---

8. Subsequent amendments to section 7552 are not germane to this case. *See* P.L.1995, ch. 585, §§ 2–4 (effective July 4, 1996); P.L. 1997, ch. 214, § 1 (effective June 26, 1997); P.L.1999, ch. 339, § 1 (effective September 18, 1999).

9. The change in language that is most relevant to this case relates to the way in which the statute identifies *whose* conduct the statute is concerned with. Title 14 M.R.S.A. § 7552 (2003), *amended by* P.L.1989, ch. 555, § 13 (effective September 30, 1989), provided "[w]hoever cuts down, destroys, injures ... without license of owner...." while 14 M.R.S.A. § 7552(2) provides "[w]ithout the permission of the owner a person may not: (A) Cut down, destroy, damage...."

trespass and damage and further shall be responsible for complying with all applicable governmental regulations.

[¶ 16] First, the trespass was not *authorized* under the contract.[10] The contract between Doil and McCourt authorized McCourt to enter onto Doil's property, cut down her trees and then remove those trees from her property. The contract did not authorize McCourt to enter upon the Stockly property or to cut down the Stocklys' trees. Nor did that contract implicitly authorize such a trespass, as is evidenced by the indemnification clause requiring indemnification in the event of a trespass.

▉▉▉▉▉ [¶ 17] Second, the trespass was not the natural result of the work *contracted to be done.* The distinction between the work *contracted to be done* and the work actually done is crucial to this analysis. When applying the *Bonk* factors, we are not concerned with whether the performance of the contract was negligent, but rather whether the performance required by the contract was so inherently risky that the employer has exposed herself to liability, based on the conduct of her independent contractor, when she otherwise would have had no liability.[11] *See Eaton v.*

*European & N.A.R. Co.,* 59 Me. 520, 526 (1871) ("If the injury was the natural result of work contracted to be done, and it could not be accomplished without causing the injury, the person contracting for doing it would be held responsible.") (citations omitted).

[¶ 18] In this case, the work *contracted to be done* was the selective cutting of Doil's trees and the removal of those trees from Doil's property. No one has suggested that the selective cutting and removal of trees in general will naturally and probably result in a trespass or that it could not be accomplished without resulting in a trespass.

[¶ 19] Third, Doil did not *direct* McCourt to enter the Stocklys' property and cut down the Stocklys' trees. The contract was to cut trees on a piece of property specifically identified by deed.[12] A contract to cut trees on parcel A, specifically identified as such by deed, is not a directive to *also* cut the trees on parcel B. The record contains absolutely no evidence that Doil directed McCourt to enter the Stocklys' property and cut down their trees, nor do the Stocklys so assert. In fact, the parties stipulated that Doil was specifically concerned that trees might be

---

**10.** To *authorize* means to (1) "give legal authority; to empower"; or (2) "[t]o formally approve; to sanction." BLACK'S LAW DICTIONARY 129 (7th ed.1999).

**11.** Doil is liable for the damages caused by her own failure to mark her boundaries. However, it only makes sense to hold Doil responsible for the intentional or negligent act of McCourt if she reserved the right to control the manner of his performance somehow. Because McCourt was an independent contractor, the only opportunity Doil had to exert control over the manner of his performance was during the formation of the contract when she was deciding what exactly it was that she wanted him to perform. Consequently, that is the point in time that we look to. *See* 2 DAN B. DOBBS, THE LAW OF TORTS § 336 (2001) ("[T]he independent

contractor's employer has a say-so only about whether the end product is acceptable, not about the exact manner or means used to achieve it.").

**12.** The contract provides:

1. [T]hat the Seller agrees to sell to the Buyer, upon the terms and conditions hereinafter, stated, the merchantable timber on the *property in Falmouth, County of Cumberland, State of ME, as described in deed recorded in the Cumberland County Registry of Deed[s] in Book 3696, Page 329, Tax Map R04, Lot # 20, 22, 21–B, 19.* For purposes of this agreement, the term "merchantable timbers" shall mean all of the species of trees having a diameter of 12 inches measured on the stump.
(Emphasis added.)

removed from property she did not own and instructed McCourt to keep his selective cutting "well within the boundaries of the Doil property."

[¶ 20] Finally, the trespass was not subsequently ratified by Doil. The parties themselves stipulated that there is no way to know whether the payment from McCourt to Doil was for Doil's and the Stocklys' trees or just for Doil's own trees. Nor does the record contain any evidence that would have compelled a fact-finder in reaching a conclusion as to the source of the payment. Additionally, Doil's acceptance of the payment could ratify the acts of McCourt only if she was aware of all the material facts relating to McCourt's acts. *See, e.g., Perkins v. Philbrick,* 443 A.2d 73, 75 (Me.1982) (stating that all material facts must be known to principle before act may be deemed ratified). There is no evidence in the record that suggests Doil knew, at the time she accepted payment, that McCourt had entered onto or cut trees from the Stocklys' property. Common sense suggests the opposite.

[¶ 21] The record demonstrates that Doil has not exposed herself to liability based upon the acts of her independent contractor pursuant to *Bonk,* 605 A.2d at 79. Consequently, the Superior Court's determination that Doil is liable under 14 M.R.S.A. § 7552(2) and responsible for damages and fees for professional services pursuant to 14 M.R.S.A. § 7552(4)(A), (5) must be vacated.

B. Damages Pursuant to 14 M.R.S.A. § 7552-A

1. Stumpage Value

[¶ 22] The Stocklys contend that the trial court erred by awarding them damages pursuant to 14 M.R.S.A. § 7552-A based only on the value of the severed trees, or the "stumpage value." Section 7552-A provides that the "person who failed to mark the person's property lines

is liable in a civil action, in double damages, to that owner of the abutting land. These damages are in addition to any damages to which the owner of the abutting land may be entitled under section 7552."

[¶ 23] "We have previously permitted two types of recovery in cases involving the removal of another's trees. The owner can claim the diminution in value of the land or treat the timber as personal property and claim the value of the severed trees as his damage." *Leavitt v. Cont'l Tel. Co. of Me.,* 559 A.2d 786, 787 (Me. 1989). In *Leavitt,* 559 A.2d at 787–88, we concluded that the trial court erred by refusing to admit evidence of the restoration cost for ornamental trees that were cut during a trespass. Like the Stocklys' property, the Leavitt's land did not diminish in value as a result of the trespass or cutting.

[¶ 24] In *Leavitt,* we were not required to address any claim for damage to the land separate from the restoration costs for the trees. Here, the parties have stipulated that it will cost $35,750 to remove the debris left by McCourt. Those clean up costs, which may be necessary to reduce risks of fire, erosion and sedimentation of streams, and to restore use of trails and roads on the property, are recoverable as an element of damages pursuant to section 7552–A. The matter must be remanded to the Superior Court for it to consider clean up costs along with stumpage value as elements of the damage recoverable pursuant to section 7552–A.

2. Reduction of Damages and Attorney Fees

[¶ 25] The Stocklys argue that the Superior Court exceeded the bounds of its discretion when it reduced their damage award pursuant to 14 M.R.S.A. § 7552(3)(B) and that the Superior Court should have awarded a greater amount of attorney fees pursuant to 14 M.R.S.A.

§ 7552(5). Because Doil is not liable under 14 M.R.S.A. § 7552, these arguments are now moot.

### 3.   Prejudgment Interest Rate

[¶ 26] The parties agree that the trial court miscalculated the pre-judgment interest rate. The correct pre-judgment interest rate is 3.28%.

The entry is:

Judgment vacated and the matter remanded for reconsideration of damages pursuant to 14 M.R.S.A. § 7552–A (2003).