STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP14-71

SARAH E. CHENEY,
       Petitioner

v.

DECISION

MAINE UNEMPLOYMENT
INSURANCE COMMISSION

Petitioner Sarah E. Cheney filed a M.R. Civ. P. 80C appeal from the Decision of the State of Maine Unemployment Insurance Commission ("Commission") finding she is not eligible to receive unemployment benefits because she is not "available" to work pursuant to 26 M.R.S § 1192(3). For the reasons discussed below, the Court affirms the Commission's Decision and denies Petitioner's appeal.

Petitioner is a mother of five-children who has historically worked full-time, primarily as a retail worker. Most recently, she worked as a cashier for the Augusta, Maine Mobil on the Run gas station and convenience store, owned and operated by Global Montello Group. Petitioner worked for Global Montello Group from November 2008 until November 2013. She typically worked 40 hours a week, working second or third shift during the week, with Mondays and Thursdays off and working any shift on both weekend days.

In 2013, Petitioner took maternity leave from Global Montello Group for the birth of her youngest son and returned to work on November 6, 2013. When Petitioner returned to work, she was not provided an adequate place to pump breast milk. On November 8, 2013, Petitioner provided her two-weeks notice to her employer, stating that she was forced to resign due to her employer's failure to

1

accommodate her need to pump breast milk throughout her shift and the employer's refusal to accommodate her scheduling requests.

Due to a change in her husband's work schedule, Petitioner can only work from 6:30 p.m. until 6:30 a.m. Monday through Friday, but is available for all shifts on Saturday and Sunday when her husband can be home with their children. Petitioner has transportation, is willing to commute as far as thirty miles, and is willing to accept a minimum wage job. Petitioner obtained her GED and has been a member of the workforce for the past ten years. As of at least February 27, 2014, she has not turned down any job offers since she last worked.

Petitioner applied for unemployment benefits, but was denied by Deputy Decision No. 8, which found that she was not "available" to work.[1] Petitioner appealed this decision to the Division of Administrative Hearings and, on February 27, 2014, a hearing was held. On February 28, 2014, the Hearing Officer issued a decision finding that Petitioner was not able and available for work and hence, disqualified from receiving unemployment benefits. Petitioner appealed that decision to the Commission, which upheld the Hearing Officer's finding that Petitioner is not available to work in a 2-1 majority decision.

The Commission majority explained that, "[a]s found by the Hearing Officer, [Petitioner] was not available to work during the hours for which she could reasonably be expected to work in her usual and customary occupation as a retail

---

[1] Petitioner was also denied benefits by Deputy Decision No. 6, which found that she voluntarily left her employment without good cause attributable to the employment. That decision was appealed and eventually reversed by the Commission. The question of whether Petitioner voluntarily left her employment without good cause is not at issue in the present appeal.

worker." Previously, the Commission noted, Petitioner had worked all hours of the day and days of the week as a retail worker. As a result, given her new restrictions, "she was not available to work during the hours in which she could reasonably be expected to be employed within the meaning of 26 M.R.S. § 1192(3) and the [Code of Maine] Rules as stated in Chapter 9(2)(A) of the Rules [governing the Unemployment Insurance Commission, which state that], "[c]laimants whose occupations normally involve working on more than one shift must be available to work on all such shifts."

The Commission majority also found that the "record does not show that [Petitioner] was able and available for full-time work in occupations that did not require weekday daytime hours" and that her unavailability from 6:30 a.m. to 6:30 p.m. "generally encompasses standard hours for any retail establishment or occupation or business for which [Petitioner's] prior training and experience would make her fitted or qualified." Finally, the Commission majority determined that Petitioner's situation does not fall within the exception for availability based on parental obligations and does not otherwise constitute good cause. Petitioner appealed from that Decision to the present Court.

In reviewing decisions of the Maine Unemployment Insurance Commission, the Court's review is "limited to determining whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *See McPherson v. Maine Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The Court will not disturb a decision of the Commission "unless the

3

record before the Commission compels a contrary result." *Id.*; *see also Gerber Dental Center v. Maine Unemployment Ins. Comm'n*, 531 A.2d 1262, 1263 (Me. 1987).

Furthermore, the Court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344 (quoting *Crocker v. Maine Unemployment Ins. Comm'n*, 450 A.2d 469, 471 (Me. 1982)). When conflicting evidence is presented, such conflicts are for the fact finder to resolve. *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 634 (Me. 1984). In particular, credibility determinations are "exclusively the province of the Commission and will not be disturbed on appeal." *Sprague Electric Co. v. Maine Unemployment Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988). Stated differently, the Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. *Dodd v. Secretary of State*, 526 A.2d 583, 584 (Me. 1987) (citing *Gulick v. Bd. of Envtl Protection*, 452 A.2d 1202, 1209 (Me. 1982)). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982) (citation omitted).

In addition, the Court gives "considerable deference to an agency's interpretation of its own internal rules, regulations, and procedures and will not set [a decision] aside, unless the rule or regulation plainly compels a contrary result." *Downeast Energy Co. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 13, 756 A.2d 948 (quotation omitted). "The [agency's] decision will not be disturbed if it results from

4

a reasonable exercise of discretion and is supported by substantial evidence in the record." *Pine Tree Telephone & Telegraph Co. v. Public Utilities Commission*, 634 A.2d 1302, 1304 (Me. 1993). Nevertheless, if the Court determines that the Commission committed an error of law, it must reverse or modify the Commission's decision. *McPherson v. Maine Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. In determining whether the Commission has correctly applied the law, it is critical to consider "the purposes of the Employment Security Act" whose "remedial nature...dictates a liberal construction in favor of the employee" and that "[a]ny disqualification, being penal in nature, must be strictly reviewed." *Brousseau v. Maine Employment Security Comm'n*, 470 A.2d 327, 329 (Me. 1984).

Petitioner argues that the Commission committed an error of law by finding that she was not available to work within the meaning of the Employment Security Act. First, she argues that the Commission turned an objective inquiry into the nature of an occupation requiring availability during the hours which are customary for the trade or occupation, into a subjective standard requiring Petitioner to be available for all shifts because she personally worked various shifts in retail. She argues that just because she has worked first, second, and third shifts at various points does not mean that retail work, as an occupation, normally involves working all three shifts. Furthermore, Petitioner contends that out of state authority has held that an unemployment applicant with limited availability is still eligible for benefits if those limitations do not have the effect of removing the applicant from the labor market. (citing *Hospital Service Ass'n of Northeastern Penn. v. Penn. Unemployment Compensation Bd. of Review*, 476 A.2d 516, 517 (Pa. 1984) (finding that claimants

5

who were only available to work the night shift due to child care obligations during the day were eligible to receive unemployment benefits)).) In this case, Petitioner contends benefits are warranted because Ms. Cheney is available to work approximately 108 out of the 168 hours in a week and "there certainly are retail jobs with late night, overnight and weekend shifts for which Ms. Cheney is available to work."

Second, Petitioner argues that the Commission erred in failing to apply 26 M.R.S. § 1192(3) to determine Petitioner's availability to work in another occupation for which she is qualified. As an initial matter, Petitioner contends that she put forth the necessary evidence of her education and work history to allow the Commission to determine the other trade, occupation, profession, or business for which her prior training or experience shows she is fitted or qualified. (quoting 26 M.R.S. § 1192(3).). Petitioner shows that she is qualified for any entry level position requiring, at most, a high school education, such as late-night or overnight cleaning, call center or answering service operator, night time receptionist, or factory worker. Rather than consider these positions, Petitioner contends the Commission dodged the issue and held, without mentioning any other occupations, that her unavailability during weekday daytime hours means she is unavailable to work in retail or any other occupation she may be qualified for.

Third, Petitioner contends that her child-care responsibilities constitute good cause for the limitations on her availability to work pursuant to 12-172 C.M.R. Ch. 9 § 2(A) and Section 1192(3). While acknowledging that the Law Court has not reached this issue, Petitioner points to out of state authority which has found that

6

day time child care obligations may constitute cause of a necessitous and compelling nature (quoting *Hospital Service Ass'n of Northeastern Penn.*, 476 A.2d at 517 n.4 ("Domestic responsibilities, including the care for small children, may constitute cause of a necessitous and compelling nature".) Petitioner then argues that Section 1192(3)'s explicit carve out for unavailability due to child care between midnight and 5 a.m. recognizes that child-care obligations can create an exception to the availability requirements of the statute and rule.

Fourth, Petitioner argues that the Commission's Decision should be reversed because it is contrary to the Employment Security Act and public policy. Keeping in mind the purpose of the Employment Security Act to prevent the spread, and lighten the burden of unemployment, Petitioner argues the Commission's Decision should be reversed because its reasoning insinuates that a caretaker who needs to be home with children during the day, but is available 108 out of 168 hours during the week is "unavailable" for work. Petitioner also argues that given the nature of her restrictions, the Commissions' ruling, in effect, disproportionately disadvantages women who remain the primary caretakers of children.

The Commission responds that its finding is based upon substantial evidence in the record and a reasonable interpretation of the Employment Security Law. First, the Commission explains that its determination that Petitioner was not available to work during the hours for which she could be reasonably expected to work as a retail worker was supported by substantial evidence on the record. In particular, it points to Petitioner's inability to work on weekdays from 6:30 a.m. to 6:30 p.m., her history of working all hours of the day and days of the week as a retail

7

worker, and Chapter 9(2)(a)'s requirement that "[c]laimants whose occupations normally involve working on more than one shift must be available to work on all such shifts."   (quoting 12-172 C.M.R. Ch. 9 § 2(A).)

Second, the Commission explains that it found Petitioner was not available to work in other occupations because she was not available for work on weekdays from 6:30 a.m. to 6:30 p.m. The Commission contends that it made an appropriate finding based upon common sense and its expertise in employment matters, that Petitioner's unavailability during weekdays from 6:30 a.m. to 6:30 p.m. was within a timeframe that generally encompasses standard hours for any retail establishment or occupation or business for which Petitioner's prior training and experience would make her fitted or qualified. The Commission also argues that its Decision does not result in the conclusion that the Petitioner must be available 24/7 in order to receive benefits. Instead, it argues that it found Petitioner was not available for 60 daytime hours over the course of five-week days, which "generally encompasses standard hours for any retail establishment."

Third, the Commission argues that it considered and rejected Petitioner's argument that her inability to work all shifts due to child-care issues was for good cause. The Commission's Rules allow exceptions to the availability for work requirement for "good cause" which includes, among others, "causes of a necessitous and compelling nature. (citing 12-172-C.M.R. Ch. 1 § 3(T.)  The Commission argues that it reasonably concluded that Petitioner's child-care issues did not constitute good cause of a necessitous and compelling nature because they were ongoing and not an emergency.

8

Fourth, the Commission argues that as an initial matter, Petitioner's public policy arguments are for the Legislature to consider, not the Court. The Commission then contends that, in any event, the Legislature has considered Petitioner's public policy arguments as evidenced by Section 1192(3)'s exception that allows unavailability due to child-care obligations during the hours between midnight and 5 a.m. Based on the rule of interpretation that express mention of one concept implies the exclusion of others not listed, the Commission argues that the Legislature determined that child-care obligations between the hours of 5 a.m. and midnight do not constitute an exception for a workers availability. (citing *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994) and *Wescott v. Allstate Ins.*, 397 A.2d 156, 169 (Me. 1979)).)

Petitioner replies that the Commission did not determine her availability to work in another occupation despite adequate record evidence. Petitioner argues that it strains credulity to assert that given Petitioner's GED and ten years of work experience, there is no other occupation for which she is qualified and that the Commission could not, in its expertise and based on common sense, find was available given Petitioner's restrictions. The Commission, however, failed to do this and simply found Petitioner was unavailable without mentioning any other occupations. This, Petitioner contends, constitutes an error of law.

Finally, Petitioner replies that the Court may consider the purposes of the Employment Security Act and the public policy implications of the Commission's Decision because the Commission's Decision is plainly contrary to the remedial

9

nature of the statute—dictating a liberal construction in favor of the employee—since it does not lighten the burden of a large class of unemployed workers.

Under the Employment Security Law, an unemployed individual is eligible for unemployment benefits with respect to any week only if:

> The individual is able to work and is available for full-time work at the individual's usual or customary trade, occupation, profession or business or in such other trade, occupation, profession or business for which the individual's prior training or experience shows the individual to be fitted or qualified...provided that no ineligibility may be found solely because the claimant is unable to accept employment on a shift, the greater part of which falls between the hours of midnight to 5 a.m., and is unavailable for that employment because of parental obligation...and provided that an unemployed individual who is neither able nor available for work due to good cause as determined by the deputy is eligible to receive prorated benefits for that portion of the week during which the individual was able and available.

26 M.R.S. § 1192(3). Chapter 9 of the Rules Governing the Administration of the Employment Security Law sets forth the factors to be considered when addressing the question of whether an individual is able and available for work. 12-172 C.M.R. Ch. 9 § 2. Regarding availability for work, Chapter 9 explains, in pertinent part:

> In order to meet the availability for work requirements of the Employment Security Law, a claimant must be available to accept work during the hours which are customary for the trade or occupation in which he usually works or for the trade or occupation in which he has prior training or experience. Claimants whose occupations normally involve working on more than one shift must be available to work on all such shifts....

12-172 C.M.R. Ch. 9 §2(A). In addition, Chapter 1 of the Rules defines "good cause" for purposes of not being available, as follows:

> Good Cause. For the purposes of the Employment Security Law and regulations, the Commission determines that "good cause" shall be when the unemployed individual is ill, or when illness of the unemployed individual's spouse or children, or parents, or

stepparents, brothers or sisters, or relatives who have been acting in the capacity of a parent of either the claimant or spouse, require his or her presence; or he or she is in attendance at a funeral of such relative; or required by religious conviction to observe a religious holiday; or required by law to perform either a military or civil duty; or other cause of a necessitous and compelling nature....

12-172 C.M.R. Ch. 1 § 3(T) (emphasis added).

The Court finds that substantial evidence supports the Commission's finding that Petitioner was not "available" to perform retail work within the meaning of 26 M.R.S. § 1192(3) and 12-172 C.M.R. Ch. 9 §2(A). The record is clear that Petitioner is not available to work from 6:30 a.m. through 6:30 p.m. The Commission, informed by Petitioner's history of working all hours of the day and days of the week in prior retail jobs, concluded that her occupation—retail work—"normally involves working on all shifts...." In light of 12-127 C.M.R. Ch. 9 § 2(A)'s requirement that, in order to be available, claimants "whose occupations normally involve working on more than one shift *must* be available to work on all such shifts...," the Commission concluded that Petitioner was not "available" to perform retail work. (emphasis added). While this finding does imply that in order to be "available" to perform retail work, a claimant must be available 24/7, it is consistent with Section 1192(3) and the Commission's Rules.

The Court finds that the Commission did not abuse its discretion or commit an error of law by finding that Petitioner was not "available" to work in another trade, occupation, profession, or business for which her training or experience shows she is fitted or qualified. This is because the Commission's determination that Petitioner's unavailability between 6:30 a.m. to 6:30 p.m. "generally encompasses standard hours for any retail establishment or occupation or business

11

for which" Petitioner is qualified is a reasonable exercise of the Commission's discretion, informed by its expertise in the labor market. While Petitioner makes a rather compelling argument that she could work a number of positions that involve late-night or overnight shifts, the Commission implicitly found that Petitioner's time restrictions limit are substantial enough to render her unavailable within the meaning of the Employment Security Act.

The Court finds that the Commission did not err in determining that Petitioner's child-care responsibilities did not constitute good cause for the limitations on her availability to work. As elaborated upon by the Commission, the fact that Section 1192(3) includes a child-care carve out between the hours of midnight and 5 a.m. indicates that no such carve out exists for child-care during the other hours of the day. *Musk v. Nelson*, 647 A.2d 1198, 1201-1202 (Me. 1994) ("express mention of one concept [in a statute] implies the exclusion of others") (citation omitted). With this in mind, it cannot be said that the Commission abused its discretion in finding that Petitioner's child-care issues do not otherwise constitute "good cause" based on their "necessitous and compelling nature" because they involve an on-going, non-emergency situation.

The Court finds that the Commission's Decision is not contrary to the Employment Security Act or public policy. While the primary purpose of the Employment Security Act is to ameliorate the effect of unemployment on workers, this policy is not pursued without limits. *See Cornwall Industries, Inc. v. Maine Dep't of Manpower Affairs*, 351 A.2d 546, 552 (Me. 1976). Instead, the Legislature, and the Commission, crafted statutes and regulations to enforce and carry out those goals.

12

Pertinent to the present dispute is the Legislature's express carve-out that prohibits the Commission from finding a claimant ineligible simply because he or she cannot work a shift that falls primarily between the hours of midnight to 5 a.m. due to parental obligations. 26 M.R.S. § 1192(3). This carve-out indicates that the Legislature was aware of the plight of unemployed parents with parental obligations and chose to lessen their burden by not requiring them to be available between midnight and 5 a.m. By limiting this carve out to the hours between midnight and 5 a.m., the Legislature implicitly determined that parental obligations during the remaining hours of the day do not, by themselves, constitute good cause for being unavailable. *See Musk*, 647 A.2d at 1201-1202.[2]

The entry will be:

The Decision of the Unemployment Insurance Commission #14-C-02918, dated September 30, 2014 is AFFIRMED.

Clerk may docket by reference.

October 13, 2015

_____

JUSTICE, SUPERIOR COURT

---

[2] This result in this case is disturbing to the court for two reasons. Here is a woman ready, willing and able to work full time as in the past albeit during certain hours, hours which are considered highly undesirable to others. And, her limitations are based upon her need to meet parental responsibilities.

13

<u>Kennebec</u>    Docket No. AP-14-71
              County

Action:  <u>Petition for Review</u>                    **J. Marden**        ~~J. Mullen~~
         80C

Sarah E. Cheney                        vs.    Unemployment Insurance Cmsn

Plaintiff's Attorney                                    Defendant's Attorney

Adrianne Fouts, Esq.                           Nancy Macirowski, AAG
84 Marginal Way, Ste. 600                      6 State House Station
Portland, ME 04101-2480                        Augusta, ME  04333-0006

Date of Entry

| | |
|---|---|
| 11/04/14 | Petition for Review of Final Agency Action, filed (10/29/14). s/Fouts, Esq. |
| 11/14/14 | Letter entering appearance for UIC, filed.  s/Macirowski, AAG |
| 12/2/14 | Administrative Record, filed 12/1/14.  s/Macirowski, AAG |
| 12/2/14 | Notice and Briefing Schedule issued. Copy to Atty Fouts and AAG Macirowski |
| 1/7/15 | Consent Motion to Enlarge Time for Petitioner to File Brief, filed 1/6/15. s/Fouts, Esq. |
| 1/13/15 | ORDER, Mullen, J.  (1/9/15) Motion to Enlarge Time to file brief is GRANTED.  Brief due 1/19/15. Copy to Atty Fouts and AAG Macirowski |
| 1/21/15 | Second Consent Motion to Enlarge Time for Petitioner to File Brief, filed (1/16/15) s/Fouts, Esq. |
| 1/26/15 | ORDER, Mullen, J. Motion to Enlarge, Granted (1/23/15). Deadline for Petitioner to file brief is extended to January 27, 2015. |
| 1/30/15 | Brief of Petitioner, filed (1/26/15). s/Fouts, Esq. |
| 3/4/15 | Respondent's Brief, filed (2/16/15). s/Macirowski, AAG |
| 3/17/15 | Petitioner's Reply Brief, filed (3/13/15). s/Fouts, Esq. |
| 7/2/15 | Oral argument scheduled for 8/5/15 at 9:30 Notice of Hearing sent to Atty Fouts and AAG Macirowski |
| 7/20/15 | Oral argument rescheduled for 8/11/15 at 9:30 Corrected Notice of Hearing sent to Atty Fouts and AAG Macirowski |