2005 ME 118

**Alvin TEMM**

v.

**S.D. WARREN COMPANY et al.**

Supreme Judicial Court of Maine.

Argued: April 27, 2005.
Decided: Dec. 6, 2005.

James J. MacAdam, Nathan A. Jury (orally), MacAdam Law Offices, Portland, for employee.

Thomas E. Getchell (orally), Troubh Heisler, Thomas R. Kelly (orally), Darby C. Urey, Robinson Kriger & McCallum, Portland, for employer.

---

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

LEVY, J.

[¶ 1] This is an appeal from a decision of a hearing officer of the Workers' Compensation Board (*Jerome, HO* ), awarding benefits to Alvin Temm, but reducing the award by the amount Temm receives from an employer-provided disability insurance plan. We granted appellate review to address the following question: "Whether, pursuant to 39–A M.R.S.A. § 221(10) (2001), an employer is entitled to an offset for disability benefits when the disability insurance plan was in existence on December 31, 1992, but renewed after that date?" We answer that question in the affirmative, and affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Alvin Temm performed various production jobs for S.D. Warren for thirty-two years. He worked as an hourly worker from 1965 to 1985, and a salaried supervisor from 1985 until he was laid off in 1997. In 1997, he brought a workers' compensation claim alleging that he was incapacitated from back and leg pain due to a 1994 injury. That claim was denied. In 1997, Temm was laid off from S.D. Warren, and in 1998 he began receiving disability retirement benefits as a result of his back and leg injuries.

[¶ 3] Temm received disability retirement benefits pursuant to two different disability plans, the hourly employee plan and the salaried employee plan. S.D. Warren's representative testified that the hourly employee plan contains a provision that authorizes a dollar-for-dollar offset against workers' compensation benefits. The salaried employee plan, at issue in this case, is silent as to offset.

[¶ 4] In 2001, Temm filed a petition for restoration of benefits and to fix compensation concerning the 1994 injury, and a petition for award and to fix compensation concerning three injuries dated August 16, 1995, November 8, 1996, and December 6, 1996. After a hearing, the hearing officer determined that the August 16, 1995, and the November 8, 1996, work-related injuries are compensable injuries, but the employer is entitled to offset the disability retirement payments from the award. The hearing officer made an express finding that the disability plan, in existence prior to December 31, 1992, had been renewed thereafter.

[¶ 5] All parties filed motions for findings of fact and conclusions of law, pursuant to which the hearing officer amended the decree to establish Temm's average weekly wage, and to elaborate on its finding regarding renewal of the disability plan. Temm filed a petition for appellate review, which we partially granted pursuant to 39–A M.R.S.A. § 322 (2001), limited to the issue of whether the employer is entitled to offset the disability benefits pursuant to section 221.[1]

## II. DISCUSSION

 [¶ 6] Section 221 of the Workers' Compensation Act provides for the coordi-

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

1. Temm has filed a motion for clarification, in which he asserts that our order of December 13, 2004, is ambiguous as to the issue on which we granted appellate review, and asks us to address several additional issues. In the order, we assigned an incorrect numerical designation to the chosen issue. We also plainly stated, however, that we were granting appellate review to address only the legal question related to 39–A M.R.S.A. § 221(10) (2001). We therefore confine our review to that question.

nation of benefits an employee receives pursuant to the Act with payments the employee receives pursuant to a disability insurance policy provided by the same employer from whom the benefits payable under the Act are received. 39–A M.R.S.A. § 221(3)(A)(2), (3) (2001).[2] Section 221(10) provides an exception to the general rule as follows:

> **10. Exceptions for certain disability payments.** This section does not apply to any payments received or to be received under a disability insurance plan provided by the same employer if that plan is in existence on December 31, 1992. Any disability insurance plan entered into or renewed on or after January 1, 1993 may provide that the payments under that plan provided by the employer may not be coordinated pursuant to this section.

[¶ 7] The hearing officer interpreted section 221 to require coordination of benefits in this case based on her finding that although the plan was in existence on December 31, 1992, it was renewed on or after January 1, 1993. Temm contends that if a disability plan was in existence as of December 31, 1992, the coordination of benefits is prohibited even if the plan was renewed on or after January 1, 1993.

[¶ 8] In construing section 221(10), we first examine the plain meaning of the statutory language, "and we construe that language to avoid absurd, illogical or inconsistent results." *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). If the statutory language is ambiguous, we then look beyond the plain meaning and examine other indicia of legislative intent, including legislative history. *Id.*

[¶ 9] Section 221(10) provides in effect that (1) disability benefits paid pursuant to plans in effect prior to December 31, 1992, are not to be offset; and (2) new plans and old plans renewed after January 1, 1993, may expressly provide for no offset. At issue in this case, however, is whether benefits paid pursuant to an old plan that was renewed after January 1, 1993, but is silent as to coordination, must be offset. Because section 221(10) does not directly

---

2. Section 221 provides, in relevant part:

> **1. Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:
>
> ....
>
> **B.** Payments under ... a disability insurance policy provided by the employer; or
>
> ....
>
> **3. Coordination of Benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.
>
> **A.** The employer's obligation to pay or cause to be paid weekly benefits ... is reduced by the following amounts:
>
> ....
>
> (2) The after-tax amount of the payments received or being received under a self-

> insurance plan or a wage continuation plan or under a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy....
>
> (3) The proportional amount, based on the ratio of the employer's contributions to the total insurance premiums for the policy period involved, of the after-tax amount of the payments received or being received by the employee pursuant to a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received, if the employee did contribute directly to the payment of premiums regarding the disability insurance policy[.]

39–A M.R.S.A. § 221 (2001).

address this question, we conclude that the statute is ambiguous, and we attempt to discern the Legislature's intent.

[¶ 10] Prior to the enactment of the current version of the Act, Maine required coordination of workers' compensation benefits paid pursuant to employer-funded disability insurance plans. P.L. 1985, ch. 372, § A, 26 (effective June 30, 1985) (codified as amended at 39 M.R.S.A. § 62–B (1989)).[3] Section 221(10) was enacted by the Legislature as part of the wholesale redrawing of Maine's workers' compensation system, P.L. 1991, ch. 885, § A–8 (effective January 1, 1993), and was based on the Michigan Workers' Compensation Act. L.D. 2464, Statement of Fact, § A, at 214 (115th Legis. 1991) ("Section 221 is based on the Michigan coordination of benefit provision found in § 418.354."); see MICH. COMP. LAWS ANN. § 418.354 (West 1999).[4]

[¶ 11] While the precursor to Maine's current statute required coordination of disability and workers' compensation benefits, the precursor to Michigan's statute did not. See Gen. Motors Corp. v. Romein, 503 U.S. 181, 184, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). When Michigan revised its statute to allow for coordination, it included an exception for disability benefits paid pursuant to plans in effect before the enactment. The intent of including the exception in Michigan was to "prevent retroactive application of the act's coordination provisions and thus protect retirees who may have retired on the assumption that their workers' compensation and disability pension benefits would not be coordinated." Murphy v. City of Pontiac, 221 Mich.App. 639, 561 N.W.2d 882, 884 (1997). In Maine, there was no need

---

3. Title 39 M.R.S.A. § 62–B (1989) provided, in relevant part:

 1. **Application.** This section applies when weekly compensation is payable to an *employee under section 54–B or 55–B for* any period for which he is receiving or has received old age insurance benefit payments under the United States Social Security Act . . . or payments under an employee benefit plan.
 2. **Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.
 . . . .
 B. "Employee benefit plan" means a self-insurance disability plan, wage continuation plan, disability insurance plan and a pension or retirement plan which is *funded or paid for by the employer in* whole or in part. It does not include disability insurance under the United States Social Security Act.
 3. **Coordination of benefits.** Benefit *payments subject to this section shall be* reduced in accordance with the following provisions.
 A. The employer's obligation to pay weekly compensation under section 54–B or 55–B *shall be reduced by:*
 . . . .

 (2) The after tax amount of the payments received or being received under an employee benefit plan provided by the same employer by whom benefits under section 54–B or 55–B are payable if the employee did not contribute directly to the plan; and
 (3) The proportional amount, based upon the ratio of the employer's contributions to the total contributions, of the after tax amount of the payments received or being received by the employee under an employee benefit plan provided by the same employer by whom benefits under section 54–B or 55–B are payable if the employee did contribute directly to the plan.

4. The version of the Michigan statute in effect at the time, found at MICH. COMP. LAWS ANN. § 418.354 (West 1999), provided as follows:

 (14) This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

to protect against retroactive application of the coordination of benefits. Maine already required coordination.

[¶ 12] The Statement of Fact that accompanied the prior version of Maine's coordination provision, 39 M.R.S.A. § 62–B, provides that "[t]he purpose of coordination of benefits is to preclude anyone from receiving a greater income because of the receipt of Social Security or retirement benefits along with workers' compensation than they would have received had they continued to work." Sen. Amend. B to L.D. 1634, No. S–217, Statement of Fact (112th Legis. 1985). We have reiterated in our opinions that the purpose of benefits coordination is to prohibit double recoveries and the stacking of benefits. *See, e.g., Jordan,* 651 A.2d at 360–61; *Berry v. H.R. Beal & Sons,* 649 A.2d 1101, 1103 (Me. 1994).

[¶ 13] The Statement of Fact that follows the current coordination provision states that section 221 "allows coordination of benefits in a manner similar to the former Title 39, section 62–B." L.D. 2464, Statement of Fact, § A, at 214 (115th Legis. 1991). This is consistent with the overall purpose of the 1992 Act to reduce costs in the workers' compensation system. *E.g., Ray v. Carland Constr., Inc.,* 1997

ME 206, ¶ 10, 703 A.2d 648, 652; *Bowie v. Delta Airlines, Inc.,* 661 A.2d 1128, 1131 n. 2 (Me.1995).

[¶ 14] The foregoing discussion of the legislative backdrop to the current coordination provision in section 221 demonstrates that the exception recognized in subsection 221(10) should be construed to provide employers and employees with a right to voluntarily avoid coordination of benefits in new or renewed policies, but that payments pursuant to disability plans entered into or renewed after December 31, 1992, are subject to coordination unless otherwise provided in the plan. Because the hearing officer found that the S.D. Warren disability insurance plan had been renewed after January 1, 1993, and the plan is silent as to coordination, the hearing officer properly coordinated benefits in this case.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is affirmed.