2006 ME 66

Diana WILLIAMS

v.

TYSON'S FOOD, INC., et al.

Supreme Judicial Court of Maine.

Argued: Jan. 24, 2006.
Decided: June 12, 2006.

Laura Lee Klein (orally), Senior Staff Attorney, Worker Advocate Division, Portland, for employee.

Robert J. Piampiano (orally), Ann I. Brandt, Troubh Heisler Piampiano Hark Andrucki, Portland, for employer.

James J. MacAdam, MacAdam Law Offices, P.A., Portland, for amicus curiae United States Steelworkers of America.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Tyson's Food, Inc. appeals from a decision of a hearing officer of the Workers' Compensation Board (*Jerome, HO*) determining that Diana Williams was entitled to workers' compensation benefits after she had been fired from a post-injury job for excessive late arrivals at work. Tyson's contends that 39–A M.R.S. § 214(1)(E) (2005) prohibits an award of benefits when an employee loses post-injury employment due to fault, and that the

hearing officer erred in construing the term "fault" too narrowly. We affirm.

## I. CASE HISTORY

[¶ 2] Williams injured her knee on June 19, 2002, when she slipped on a wet floor in the course of her employment by Tyson's Food. After the injury, she was restricted to light duty work. Tyson's accommodated her by assigning her to work inspecting product on the second shift. Due to child-care problems, Williams was repeatedly late for work. She was terminated on February 20, 2003. Shortly thereafter, she underwent knee surgery.

[¶ 3] Williams filed a petition for workers' compensation benefits for the period beginning February 20, 2003, and ending July 9, 2003. At the hearing, Tyson's argued that pursuant to 39–A M.R.S. § 214(1)(E), Williams had forfeited her right to wage loss benefits because she had been fired from her post-injury job due to her own fault. The hearing officer construed the term "fault" in section 214(1)(E) as synonymous with "misconduct," determined that Williams was not at fault, and

awarded partial incapacity benefits. The hearing officer granted Tyson's motion for findings of fact and conclusions of law, and issued an amended decree in which the hearing officer acknowledged that Williams's excessive lateness was the cause of her termination, but determined that she was not sufficiently culpable to merit forfeiture of benefits or other negative consequences.

[¶ 4] Tyson's filed a petition for appellate review of the hearing officer's decision, which we granted pursuant to 39–A M.R.S. § 322 (2005).

## II. LEGAL ANALYSIS

### A. The Statute and Legislative History

[¶ 5] Title 39–A M.R.S. § 214(1)[1] generally establishes the level of incapacity benefits due to an employee who has some work capacity and returns to work or could return to work after an injury. Section 214(1)(E) establishes the level of benefits for employees whose post-injury employment lasts less than 100 weeks due to

---

1. Title 39–A M.R.S. § 214(1) (2005) provides in the pertinent part:

   **§ 214. Determination of partial incapacity**

   **1. Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

   ....

   **D.** If the employee, after having been employed at any job pursuant to this subsection for 100 weeks or more, loses that job *through no fault of the employee*, the employee is entitled to receive compensation under this Act pursuant to the following.

   (1) If, after exhaustion of unemployment benefit eligibility of an employee, the employment *[sic]* since the time of injury has not established a new wage earning capacity, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.

   (2) If the employee has established a new wage earning capacity, the employee is

   entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury. There is a presumption of wage earning capacity established for any employments totaling 250 weeks or more.

   (3) If the employee becomes reemployed at any employment, the employee is then entitled to receive partial disability benefits as provided in paragraph B.

   **E.** If the employee, after having been employed at any job following the injury for less than 100 weeks, loses the job *through no fault of the employee*, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.

   (Emphasis added.)

no fault of their own. That section provides:

§ 214. **Determination of partial incapacity**

1. **Benefit Determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

. . . .

E. If the employee, after having been employed at any job following the injury for less than 100 weeks, loses the job *through no fault of the employee,* the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.

39–A M.R.S. § 214(1)(E) (emphasis added).

[¶ 6] Tyson's asserts that this provision should be read to prohibit an award of partial incapacity benefits when an employee is terminated due to her fault, at least until the employee regains employment. Subsection (E) applies in this case, Tyson's argues, because when she was fired Williams had been employed for less than 100 weeks following the work injury.

[¶ 7] In construing section 214(1)(E), "we first examine the plain meaning of the statutory language, 'and we construe that language to avoid absurd, illogical or inconsistent results.'" *Temm v. S.D. Warren Co.,* 2005 ME 118, ¶ 8, 887 A.2d 39, 41 (quoting *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994)). "If the statutory language is ambiguous, we then look beyond the plain meaning and examine other indicia of legislative intent, including legislative history." *Temm,* 2005 ME 118, ¶ 8, 887 A.2d at 41.

[¶ 8] The statute does not explicitly address entitlement to benefits or level of benefits for employees who have lost employment due to fault, and leaves open the question of whether any consequence should attach to termination from post-injury employment for fault. Therefore, the statute is ambiguous, and we attempt to discern the Legislature's intent.

[¶ 9] Prior to 1992, Maine's Workers' Compensation Act did not include a provision analogous to section 214(1)(D) and (E). *See* 39 M.R.S.A. § 55–A (Pamph. 1987); 39 M.R.S.A. § 55–B (Supp. 1989). In several decisions construing pre–1992 versions of the statute, we determined that an employer could not terminate or reduce benefits when the employee was fired from post-injury employment for fault. *See Bernard v. Mead Publ'g Paper Div.,* 2001 ME 15, ¶ 9, 765 A.2d 576, 579 (holding pursuant to former title 39 that termination for fault did not constitute grounds for discontinuing benefits); *Cote v. Great N. Paper Co.,* 611 A.2d 58, 59 (Me.1992) (holding failure of reemployment drug test did not constitute grounds for reducing employee's benefits); *Cousins v. Georgia–Pacific Corp.,* 599 A.2d 73, 74 (Me.1991) (holding that employee was entitled to restoration of partial incapacity benefits despite having been fired for dishonesty; citing cases in which the reason for termination "is irrelevant if the employee sustained continued incapacity from a compensable injury").

[¶ 10] We have not had occasion since the enactment of the current version of the statute to consider the meaning of the words "no fault of the employee" in section 214(1)(D) or (E). However, in *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 589–90 (Me.1996), we considered whether termination for cause from post-injury employment constituted a refusal of a bona fide offer of employment that would result in a suspension of benefits pursuant to section 214(1)(A).

[¶ 11] We concluded "that an employee's termination for cause is not included

among the statutory grounds for suspending benefits pursuant to subsection 214(1)(A). Considering the plain language of our statute, we are unable to equate an employee's termination for cause with a 'refusal' of an 'offer' of employment." *Id.* at 590. *But see Holt v. Sch. Admin. Dist. No. 6*, 2001 ME 146, ¶¶ 7, 8, 782 A.2d 779, 782 (holding voluntary resignation from post-injury employment, not compelled by good and reasonable cause, constitutes refusal of an offer of reasonable employment by which employee relinquished entitlement to benefits).

[¶ 12] The Statement of Fact that accompanies the current version of the statute provides that "[s]ection 214 is derived from Michigan § 418.301 and determines the amount of partial incapacity benefits that are due." Statement of Fact, L.D. 2464, § A at 216 (115th Legis. 1991).[2]

[¶ 13] We noted in *Bureau* that the Michigan statute is a partial codification of common law "favored work doctrine," 678 A.2d at 589–90, now referred to as "reasonable employment." *Sington v. Chrysler Corp.*, 467 Mich. 144, 648 N.W.2d 624,

2. MICH. COMP. LAWS § 418.301(5) (West 1999), on which section 214 was based, provides as follows:

(5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

(b) If an employee is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 355.

(c) If an employee is employed and the average weekly wage of the employee is equal to or more than the average weekly wage the employee received before the date of injury, the employee is not entitled to any wage loss benefits under this act for the duration of such employment.

(d) If the employee, after having been employed pursuant to this subsection for 100 weeks or more loses his or her job through no fault of the employee, the employee shall receive compensation under this act pursuant to the following:

(i) If after exhaustion of unemployment benefit eligibility of an employee, a worker's compensation magistrate or hearing referee, as applicable, determines for any employee covered under this subdivision, that the employments since the time of injury have not established a new wage earning capacity, the employee shall receive compensation based upon his or her wage at the original date of injury. There is a presumption of wage earning capacity established for employments totaling 250 weeks or more.

(ii) The employee must still be disabled as determined pursuant to subsection (4). If the employee is still disabled, he or she shall be entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury.

(iii) If the employee becomes reemployed and the employee is still disabled, he or she shall then receive wage loss benefits as provided in subdivision (b).

(e) If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury.

MICH. COMP. LAWS § 418.301(5) (West 1999) (footnote omitted).

628 (2002). That doctrine indicates that employers should be able to "reduce benefits by offering 'favored,' or 'light-duty' work to injured employees, and to prevent malingering by encouraging employees to accept offers of favored work." *Bureau,* 678 A.2d at 589–90.

[¶ 14] Subsection 301(5)(e) of the Michigan statute, the basis for section 214(1)(E), establishes the level of incapacity benefits for disabled employees working after an injury for less than 100 weeks, who have lost their job "for whatever reason." MICH. COMP. LAWS § 418.301(5) (West 1999). If reasonable employment is lost "for whatever reason" within one hundred weeks, the employee "shall receive compensation on the basis of the employee's wage when injured." *Sington,* 648 N.W.2d at 629 n. 7.

[¶ 15] The Maine Legislature altered the statutory language, choosing instead to base an employee's benefits on the wage at the original date of injury if the post-injury job is lost *"through no fault of the employee."* 39–A M.R.S. § 214(1)(E) (emphasis added). Thus, Michigan law is of no assistance in determining the meaning of fault in the Maine statute.

## B. The Hearing Officer's Decision

[¶ 16] The hearing officer rejected Tyson's position that the fault provisions in section 214 preclude an employee who has been fired from post-injury employment for cause from receiving partial incapacity benefits. Based on our decision in *Bu-*

*reau,* 678 A.2d 583, she concluded that the Legislature did not intend that termination for cause would result in a forfeiture of benefits. She reasoned that while section 214 does not expressly provide for an award of benefits when the employee is terminated for fault, it does not expressly prohibit such an award, and determined that 39–A M.R.S. § 213 (2005) provides additional authority for an award of partial incapacity benefits.[3] *See Bureau,* 678 A.2d at 588.

[¶ 17] While concluding that the Legislature did not intend that termination for cause precludes an award of partial wage loss benefits, the hearing officer surmised that the Legislature may have intended that some other consequence, short of forfeiture, should attach to those who lose their job through fault. She proceeded to ascertain the Legislature's intent in including the term "fault" in the statute.

[¶ 18] Not finding a definition of fault in the Workers' Compensation Act, the hearing officer looked to the definition of "misconduct" found in Maine's Employment Security Law, 26 M.R.S. § 1043(23) (2005). "Misconduct" is defined there as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." *Id.* The hearing officer concluded that Williams's lateness, caused by childcare difficulties, did not constitute culpable or irresponsible behavior.[4] Therefore, the hearing officer award-

---

3. Title 39–A M.R.S. § 213 (2005) provides, in relevant part:

   **§ 213. Compensation for partial incapacity**
   **1. Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly

   wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211.

4. Tyson's contends that the hearing officer's findings regarding the reasons for Williams's lateness are not supported by competent evidence in the record. Those findings are within the province of the hearing officer, and we

ed total incapacity benefits for the one-week period after Williams had her surgery, and partial incapacity benefits based on an imputed work capacity of $300 per week for the remainder of the period from February 20 through July 9, 2003. The hearing officer did not reach the issue of what consequence would have attached, if any, if she had determined that Williams had been fired due to fault.

## C. Conclusion

[¶ 19] Neither the plain meaning of the statute nor the legislative history discloses an intent that section 214(1)(E) should be construed to effectuate a forfeiture of workers' compensation benefits when an employee is fired from post-injury employment for cause. This provision merely establishes a guideline for awarding wage loss benefits for injured employees who have returned to work and who have lost their job through no fault of their own before one hundred weeks has elapsed.

[¶ 20] The hearing officer's decision that Williams's conduct did not rise to a level that might deserve a reduction or cessation of benefits pursuant to section 214(1)(E) constitutes a reasonable application of the statute in this case. Because the plain meaning of the statute does not compel a different result, we defer to the hearing officer's ruling under the circumstances presented by this case. *See Jordan*, 651 A.2d at 360.

The entry is:

The decision of the hearing officer is affirmed.

decline to disturb them. 39-A M.R.S. § 318