2011 ME 68

Matthew DOUCETTE

v.

**HALLSMITH/SYSCO FOOD SERVICES, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 9, 2011.
Decided: June 9, 2011.

Elizabeth J. Ernst, Esq., Douglas, Denham, Buccina & Ernst, Cara L. Biddings, Esq. (orally), Robinson Kriger & McCallum, Portland, ME, for Hallsmith/Sysco Food Services.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Matthew Doucette.

Jeffrey L. Cohen, Esq., Benjamin K. Grant, Esq., McTeague, Higbee, Topsham, ME, for amicus curiae Maine AFL/CIO.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Concurring: SAUFLEY, C.J., and LEVY, and GORMAN, JJ.

Concurring/Dissenting: ALEXANDER, J.

SILVER, J.

[¶ 1] Hallsmith/Sysco Food Services, Inc. (Sysco), appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) awarding Matthew Doucette the protection of the Act for a 2004 work injury and total incapacity benefits for a violation of the "fourteen-day rule." *See* Me. W.C.B. Rule, ch. 1, § 1. Sysco contends that the award for the fourteen-day rule violation should be vacated because (1) the third-party administrator attempted to file its notice of controversy electronically on the fourteenth day although it was not transmitted to the Board until the fifteenth day; (2) Doucette suffered no incapacity as a result of the injury; and (3) the award is unfair and imposes excessive costs on the workers' compensation system. We affirm the judgment.

## I. BACKGROUND AND PROCEDURE

[¶ 2] Matthew Doucette, now age twenty-nine, injured his back on April 1, 2004, while working as a selector in the warehouse for Sysco. He felt pain in his lower back after lifting a bag of onions onto a pallet. Doucette timely reported the injury to his supervisor, and was sent for treatment. Diagnosed with lumbar strain, he was restricted from lifting more than twenty pounds. Doucette was put on light duty for approximately two weeks, at which time he was released to full duty. He did not lose any earnings as a result of this injury. Sysco terminated Doucette's employment in May 2004 for reasons unrelated to his back injury. He had no further problems with his back until 2008, when he reinjured it while working for a different employer.

[¶ 3] On January 15, 2009, Doucette filed a petition for award against Sysco for the 2004 injury, alleging entitlement to "total/partial compensation from April 1, 2004 to the present and continuing." The hearing officer concluded that Doucette is entitled to the protection of the Act even though he suffered no loss of earnings as a result of the injury, and is not entitled to wage loss benefits. Doucette also asserted a fourteen-day rule violation against Sysco for failing to file a notice of controversy (NOC) within fourteen days of receiving the petition for award.[1] The rule requires that an employer "[w]ithin 14 days of notice or knowledge of a claim," accept a claim, pay without prejudice, or deny the claim and file a NOC.

[¶ 4] Gallagher Bassett Services, Inc. (Gallagher Bassett), served as a third-party administrator for Sysco for the 2004 date of injury. On January 16, 2009, a claims representative for Gallagher Bassett learned that Doucette's petition for award alleging the April 1, 2004, date of injury had been filed. Gallagher Bassett's file for Doucette's 2004 injury showed that Doucette had received treatment on three dates and was released to full duty work on April 21, 2004. It was the claims representative's intention to file a "partial denial," which required the filing of a NOC with the Board and also required specific coding to be entered into Gallagher Bassett's computer system.

[¶ 5] The claims representative started the process of filing a NOC on January 26, 2009, by entering the coding and the date of injury. The information went to another department within Gallagher Bassett, the Electronic State Reporting (ESR) Unit, which she anticipated would "kick" the report forward to the Maine Workers' Compensation Board. On January 27, 2009, the claims representative received a rejection notice from the ESR department because the claim required additional information, including a jurisdictional claim number (JCN). The claims representative then learned that because the claim had not been electronically reported back in 2004, she needed to generate a first report of injury in order to obtain a JCN. After initially rejecting the first report of injury due to a coding error, the Board accepted it on January 29, 2009. A JCN was generated and the claims representative believed she had transmitted the partial denial/NOC to the Board on January 29, 2009, the fourteenth day. On that same date, she sent a hard copy of the NOC by certified mail to Doucette and his attorney. The NOC in the Board's file, however, indicates a date of filing of January 30, 2009. Because Gallagher Bassett's elec-

---

1. Doucette also filed petitions for award and to remedy discrimination with the Workers' Compensation Board against a different employer regarding the 2008 date of injury, but those petitions are not at issue in this appeal.

tronic communication system did not transmit the NOC to the Board until after midnight, the NOC was filed on the fifteenth day.

[¶ 6] The claims representative did not learn that there had been a late filing until March 19, 2009. Upon learning of Doucette's claim that he was entitled to payment for total benefits from the date of incapacity due to the late-filed NOC, Gallagher Bassett attempted to determine the extent of Doucette's claim of incapacity. On April 13, 2009, having received no response from Doucette, Gallagher Bassett paid Doucette a sum equal to one dollar for each working day after April 1, 2004.

[¶ 7] Because the Board did not receive the NOC until after midnight on the fifteenth day, the hearing officer determined that Sysco was in violation of the fourteen-day rule. The hearing officer found:

> [T]he insurer diligently attempted to file the NOC in a timely fashion but ... a series of internal problems, culminating in the insurer's own automated system bundling electronic claims for filing after midnight on the night of January [29], resulted in the NOC being transmitted to and received at the Board (and therefore "filed" under the Rule) in the early morning hours of January 30, 2009, which was the 15th day after the employer received notice of the claim for incapacity benefits.

*See* Me. W.C.B. Rule, ch. 3, § 2(2)(A)[2] (providing that a document is filed with the Board when the Board receives it). Thus, the hearing officer ordered Sysco to pay Doucette total incapacity benefits from April 1, 2004, to April 13, 2009, the date the violation was cured, with credit for earnings and statutory offsets.[3]

[¶ 8] Sysco filed a motion for additional findings of fact and conclusions of law, and a motion requesting that the hearing officer stay the enforcement of the fourteen-day rule violation pending a ruling on that motion. The hearing officer granted the stay, but ultimately denied Sysco's motion for additional findings of fact and conclusions of law, and lifted the stay. In denying the motion, the hearing officer stated:

> On the issue of the fourteen day violation, the enforcement of any deadline can seem arbitrary and harsh as applied to a given set of facts. If an employee misses a notice date or exceeds a limitations period his or her claim may be unenforceable. But a deadline does provide the advantage of clarity. In this case, the NOC was filed on the fifteenth day, January 30, 2009. Therefore the Board's Rule was violated and the penalty must stand.

[¶ 9] Sysco then filed a notice of appeal and a motion to stay enforcement of the hearing officer's decision on the fourteen-day rule violation. We issued a per curiam opinion on December 23, 2010, in which we denied Sysco's motion for a stay. *Doucette v. Hallsmith/Sysco Food Servs., Inc.*, 2010 ME 138, ¶¶ 5–6, 10 A.3d 692, 694. "Recognizing the urgency of the issue presented for appeal," we treated the motion for a stay and Doucette's response as the petition for appellate review and response pursuant to M.R.App. P. 23(b)(1),

---

**2.** Me. W.C.B. Rule, ch. 3, § 2(2)(A) provides:

> Except as specifically provided in 39–A M.R.S.A. § 101 *et seq.* or in these rules, forms and correspondence required to be filed in the Central Office of the Workers' Compensation Board are filed *when the Board receives the form* by mail, in-hand

delivery, fax, or other form of electronic transfer.

(Emphasis added).

**3.** The hearing officer further found that Sysco had made a good faith attempt to cure the violation as of April 13, 2009, which "served to end the ongoing violation."

granted the petition, and set an expedited briefing schedule. *Id.* ¶¶ 7–8, 10 A.3d at 694–95.

## II. DISCUSSION

■ [¶ 10] In this appeal, we are asked to decide whether the hearing officer erred in determining that a fourteen-day rule violation occurred. We must also decide whether it was error to award total benefits from the date of injury when the employee suffered no loss of earnings as a result of that injury, and whether that award is excessive and unfair.

A. Standard of Review and Authority of the Workers' Compensation Board

■ [¶ 11] Our focus here is on Me. W.C.B. Rule, ch. 1, § 1. We have recognized "a legislative intent to delegate broad authority to the Board to interpret the Act when the statutory language is ambiguous either by rule or through its decision-making authority." *Baker v. S.D. Warren Co.,* 2010 ME 87, ¶ 10, 3 A.3d 380, 383; *see also Bridgeman v. S.D. Warren Co.,* 2005 ME 38, ¶ 10, 872 A.2d 961, 964; *Russell v. Russell's Appliance Serv.,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d 67, 71. "[W]e give deference to Board rules interpreting the Act and have encouraged the Board to enact rules to fill in the 'gray areas' that were intentionally left in the Act." *Baker,* 2010 ME 87, ¶ 10, 3 A.3d at 383; *see also Bridgeman,* 2005 ME 38, ¶ 11, 872 A.2d at 964–65; *Russell,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d at 71; *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me.1996).

[¶ 12] The Board derives its rulemaking authority from 39–A M.R.S. § 152(2) (2010), which provides:

2. **Rules.** Subject to any applicable requirements of the Maine Administrative Procedure Act, the board shall adopt rules to accomplish the purposes of this Act. Those rules may define

terms, prescribe forms and make suitable orders of procedure to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under this Act.

(Footnote omitted.)

[¶ 13] Along with its duty to administer the Act, the Board is required to monitor cases to ensure that "[p]ayments are initiated within the time limits established in section 205." 39–A M.R.S. §§ 152(1), 153(1)(A) (2010). Moreover, the mission of the Board is "to serve the employees and employers of the State fairly and expeditiously by ensuring compliance with the workers' compensation laws, [and] ensuring the prompt delivery of benefits legally due...." 39–A M.R.S. § 151–A (2010).

B. The "Fourteen–Day Rule" and Its Precursors

[¶ 14] Maine W.C.B. Rule, ch. 1, § 1 provides, in relevant part:

1. Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:

A. Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or

B. Pay without prejudice and file a Memorandum of Payment checking "Voluntary Payment Pending Investigation" in Box 18; or

C. Deny the claim and file a Notice of Controversy.

2. If the employer fails to comply with the provisions of Rule 1.1, the employee must be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. Sec. 205(2) and in compliance with 39–A M.R.S.A. Sec. 204. The requirement for payment of benefits under this subsection auto-

matically ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.

[¶ 15] This rule was promulgated to implement 39-A M.R.S. § 205 (2010),[4] which requires that employers and insurers pay incapacity benefits "within 14 days after the employer has notice or knowledge of the injury," and weekly thereafter. 39-A M.R.S. § 205(2); *Bridgeman*, 2005

4. Title 39-A M.R.S. § 205 (2010) provides in relevant part:

§ 205 Benefit payment.

1. **Prompt and direct payment.** Compensation under this Act must be paid promptly and directly to the person entitled to that compensation at the employee's mailing address, or where the employee designates, without an award, except in cases when there is an ongoing dispute.

2. **Time for payment.** The first payment of compensation for incapacity under section 212 or 213 is due and payable within 14 days after the employer has notice or knowledge of the injury or death, on which date all compensation then accrued must be paid. Subsequent incapacity payments must be made weekly and in a timely fashion. Every insurance carrier, self-insured and group self-insurer shall keep a record of all payments made under this Act and of the time and manner of making the payments and shall furnish reports, based upon these records, to the board as it may reasonably require.

3. **Penalty for delay.** When there is not an ongoing dispute, if weekly compensation benefits or accrued weekly benefits are not paid by the employer or insurance carrier within 30 days after becoming due and payable, $50 per day must be added and paid to the worker for each day over 30 days in which the benefits are not paid. Not more than $1,500 in total may be added pursuant to this subsection. For purposes of ratemaking, daily charges paid under this subsection do not constitute elements of loss. For purposes of this subsection, "employer or insurance carrier" includes the Maine Insurance Guaranty Association under Title 24-A, chapter 57, subchapter 3.

4. **Payment of bills for medical or health care services.** When there is no ongoing dispute, if bills for medical or health care services are not paid within 30 days after the carrier has received notice of nonpayment by certified mail from the provider of the medical or health care services or, if the bill was paid by the employee, from the employee who paid for the medi-cal or health care services, $50 or the amount of the bill due, whichever is less, must be added and paid to the provider of the medical or health care services or, if the bill was paid by the employee, to the employee who paid for the medical or health care services for each day over 30 days in which the bills for medical or health care services are not paid. Not more than $1,500 in total may be added pursuant to this subsection. For purposes of this subsection, "carrier" includes the Maine Insurance Guaranty Association under Title 24-A, chapter 57, subchapter 3.

5. **Employer failure to provide notice.** An employer who has notice or knowledge of the disability or death and fails to give notice to the carrier shall pay the penalty provided for in subsection 3 for the period during which the employer failed to notify the carrier.

6. **Interest.** When weekly compensation is paid pursuant to an award, interest on the compensation must be paid at the rate of 10% per annum from the date each payment was due, until paid.

7. **Memorandum of payment.** Upon making the first payment of compensation for incapacity or upon making a payment of compensation for impairment, the employer shall immediately forward to the board a memorandum of payment on forms prescribed by the board. This information must include, at a minimum, the following:

A. The names of the employee, employer and insurance carrier;

B. The date of the injury;

C. The names of the employee's other employers, if any, or a statement that there is no multiple employment, if that is the case; and

D. The initial weekly compensation rate.

8. **Information.** Information regarding wages must be reported as provided in section 303.

9. **Discontinuance or reduction of payments.** The employer, insurer or group self-insurer may discontinue or reduce benefits according to this subsection.

(Footnote omitted).

ME 38, ¶ 8, 872 A.2d at 963. The statute also imposes penalties for failure to make timely payments when there is no ongoing dispute, not to exceed $1500. 39–A M.R.S. § 205(3).

[¶ 16] Section 205 was adopted in 1992 with the wholesale reformation of the Workers' Compensation Act, P.L.1991, ch. 885, § A–8, (effective Jan. 1, 1993),[5] and replaced the controversial "early pay system" adopted in the 1980s. P.L.1979, ch. 142 § 1 (effective Sept. 14, 1979), P.L.1983, ch. 479 § 7 (effective June 24, 1983). Under the early pay system, the failure of an employer to file a NOC within statutory time frames created a "compensation payment scheme" in which the employer was deemed to have accepted the employee's claim of injury in certain instances. *See* 39 M.R.S.A. § 51–B(1), (7) (1989), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993). The purpose of the early pay system was to encourage informal acceptance of claims and reduce attorney involvement. L.D. 1322, Statement of Fact (111th Legis. 1983). We have interpreted section 51–B to preclude a late-filing employer from disputing that an injury was work-related and to require the employer to accept the claim at the level alleged by the employee. *See Wentworth v. Manpower Temp. Servs.*, 589 A.2d 934, 937–38 (Me.1991); *Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1178–79 (Me.1989).

 [¶ 17] Although section 205 imposes a penalty for late payment, it does not preclude employers from disputing any aspect of the claim. The fourteen-day rule, initially promulgated in 1993, fills this gap. Me. W.C.B. Rule, ch. 1, § 1.

C. Validity of the Fourteen–Day Rule

[¶ 18] In the face of a challenge to its validity, we upheld the fourteen-day rule in *Bridgeman*, 2005 ME 38, ¶¶ 1, 14–15, 872 A.2d at 962, 965. We determined in that case that the Board did not exceed its authority in promulgating the rule because it was not in direct conflict with the Act. *Id.* ¶¶ 12–15, 872 A.2d at 965. We reasoned:

> Pursuant to section 205, an employer receiving notice of a claim of workers' compensation benefits has the option, initially, to pay benefits voluntarily without accepting liability and without a formal Board proceeding. 39–A M.R.S.A. § 205. The Act, in concert with the Board rules, establishes a three-step system that applies when an employer does not pay benefits voluntarily. First, the case is referred to a troubleshooter. 39–A M.R.S.A. § 153(2) (2001); Me. W.C.B. Rule, ch. 1, § 6(1). Next, if the troubleshooter is unable to resolve the issue informally, the case will then go to mediation. 39–A M.R.S.A. §§ 307(5), 313(2) (2001); Me. W.C.B. Rule, ch. 1, § 6(1); ch. 11, § 1. If the mediation is unsuccessful, the case may either be referred to arbitration, 39–A M.R.S.A. § 314 (2001), or assigned for a formal hearing before a hearing officer, 39–A M.R.S.A. § 315 (2001).

---

5. The 1992 reform of the Workers' Compensation Act was intended to reduce workers' compensation costs to employers and attract employers to the state, as well as cut costs to the system as a whole. *See* 7 Legis. Rec. S–37–42 (3d Spec.Sess.1992); 7 Legis. Rec. H–76–81, 91–100 (3d Spec.Sess.1992); Blue Ribbon Commission, Report of the Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System (Aug. 31, 1992); *see also* P.L.1991, ch. 885, Emergency Preamble (referring to recommendations of the Blue Ribbon Commission) (effective Oct. 7, 1992); *Temm v. S.D. Warren Co.*, 2005 ME 118, ¶ 13, 887 A.2d 39, 43 (stating that the overall purpose of the workers' compensation reform of 1992 was "to reduce costs in the workers' compensation system").

An employer's failure to voluntarily pay benefits is therefore the triggering event for all subsequent proceedings to determine the compensability of an injury and to award benefits if benefits are due. The filing of a notice of controversy gives notice to the employee and to the Board of an employer's intent to contest a claim. By promulgating Board Rule, ch. 1, § 1, the Board reasonably sought to encourage the timely filing of a notice of controversy to facilitate the administrative process and to ensure "the speedy, efficient, just and inexpensive disposition of all proceedings under this Act," 39–A M.R.S.A. § 152(2), and "the prompt delivery of benefits legally due," 39–A M.R.S.A. § 151–A.

*Id.* ¶¶ 13–14, 872 A.2d at 965.

[¶ 19] We also examined in *Bridgeman* whether the fourteen-day rule requires payment of total incapacity benefits from the date the petition was filed or from the earlier "date of incapacity." *Id.* ¶¶ 16–17, 872 A.2d at 965–66. The employer had argued that "the hearing officer reasonably interpreted the rule to require payment from the date the petitions were filed rather than the date of incapacity" because the Board "did not intend its rule to encompass default payments for years of benefits prior to the date the claim was actually made." *Id.* ¶ 17, 872 A.2d at 965–66 (quotation marks omitted). We disagreed, and held pursuant to the plain language of the rule that the employee must be paid total benefits from the date of incapacity. *Id.*

D. Violation of the Fourteen–Day Rule

1. Timeliness of Filing

[¶ 20] Sysco contends that the facts of record compel a finding that the employer filed the NOC in compliance with the fourteen-day rule. It argues that we should vacate the decision and deem the NOC filed on the fourteenth day because (1) the third-party administrator transmitted the NOC, intending to file it on the fourteenth day; (2) the NOC was filed prior to the opening of business on the fifteenth day and therefore there was no resulting delay; (3) the Board's decision penalizes an insurer for having a computer system designed to minimize erroneous filings to the Board; (4) if the NOC that lacked the JCN had been transmitted, the filing would have been timely; and (5) the third-party administrator acted with due diligence in attempting to timely file the NOC.

[¶ 21] The hearing officer here made a factual finding that the NOC was filed on the fifteenth day. We do not disturb that finding. *See Leighton v. S.D. Warren Co.,* 2005 ME 111, ¶ 22, 883 A.2d 906, 911 (declining to review a hearing officer's factual findings as directed by statute); *see also* 39–A M.R.S. § 318 (2010) ("The hearing officer's decision, in the absence of fraud, on all questions of fact is final. . . ."); 39–A M.R.S. § 322(3)(2010); M.R.App. P. 23(b)(3). A NOC filed on the fifteenth day after notice or knowledge of a claim is in violation of the rule and the rule calls for an award of total benefits from the date of incapacity until the violation is cured. *See Bridgeman,* 2005 ME 38, ¶ 17, 872 A.2d at 965–66. Although the equities of this case arguably weigh in favor of a lesser penalty, there were no equitable remedies available to the Board. *See Hird v. Bath Iron Works Corp.,* 512 A.2d 1035, 1037–38 (Me. 1986) ("Without express or implied legislative authority to employ equitable estoppel to bar an employer's statute of limitation defense[,] . . . the commission in this case exceeded its authority by applying the doctrine."). Likewise, because employees' rights under the Act are purely statutory, *Guar. Fund Mgmt. Servs. v. Workers' Comp. Bd.,* 678 A.2d 578, 583 (Me.1996),

and our appellate review of workers' compensation cases is limited to errors of law, *see* 39–A M.R.S. §§ 318, 322(3); *see also Kuvaja v. Bethel Sav. Bank*, 495 A.2d 804, 806 (Me.1985), we are constrained to apply rules promulgated within the Board's statutory authority.

### 2. The Plain Language of the Rule

[¶ 22] Sysco next contends that, pursuant to the plain language of the rule, which requires that benefits be paid "from the date of incapacity," it was error to award total benefits when the hearing officer expressly found that the employee suffered no entitlement to payment of any incapacity benefits for the 2004 injury "based on the merits of [that] claim."

[¶ 23] We have previously addressed whether a penalty for a fourteen-day rule violation is appropriate when there is a finding that the employee suffered no incapacity. In *Bridgeman*, we also decided a companion case in which the employee, Mitchell, had filed a petition for award for work injuries suffered in 2000, and seeking incapacity benefits beginning May 15, 2001. 2005 ME 38 ¶ 4, 872 A.2d at 962. The hearing officer determined that Mitchell was entitled only to the protection of the Act because his injuries did not result in any ongoing incapacity. *Id.* ¶ 5, 872 A.2d at 962–63. The hearing officer also found a fourteen-day rule violation because the employer did not timely file a NOC and did not contemporaneously pay past due benefits when the NOC was later filed,

and awarded Mitchell "short-term total incapacity benefits beginning on the date of incapacity, May 15, 2001." *Id.* We affirmed the hearing officer's decision. *Id.* ¶ 17, 872 A.2d at 966.

[¶ 24] Although what constitutes the "date of incapacity" was not squarely addressed in *Bridgeman*, we nevertheless treated the phrase to mean the date of the *alleged* incapacity. *Id.* ¶¶ 5, 17, 872 A.2d at 962–63, 966. We approved the approach taken by the hearing officer in this case in *Bridgeman* when we considered and rejected the argument that it is inappropriate to award a penalty when no benefits would otherwise be due. *Cf. id.* ¶ 23, 872 A.2d at 968 (*Dana, J.*, dissenting) ("I see no authority in the Act for the Board to order employers to pay total incapacity benefits in cases when benefits are otherwise not legally due. . . ."). Disallowing the award when the employee suffers no actual loss of earnings as a result of the injury could thwart an essential purpose of the rule—to encourage timely filings by employers/insurers thereby facilitating the administrative process—in all cases, not just cases in which wage loss benefits must be paid.[6]

### 3. Legislative Intent

[¶ 25] Sysco asserts that allowing the award in this case, when the employee did not meet his burden of proving any loss of earnings stemming from the work injury, is excessive, unfair to employers and insur-

---

**6.** The dissent concludes that because Sysco paid medical benefits and accommodated Doucette at the time he initially reported the 2004 injury, Sysco's duty to pay total incapacity benefits pursuant to the fourteen-day rule would not arise until the time Doucette reinjured his back and suffered additional incapacity in 2008. However, the petition for award filed by Doucette relating to the 2004 injury is separate from the 2008 injury. It is the first petition filed for that date of injury,

and in it Doucette alleges he is entitled to "total/partial" wage loss benefits due to the 2004 injury during the time he worked for Sysco and "to the present and continuing." That some benefits had been paid on the 2004 date of injury does not obviate the employer's obligation to pay benefits timely, file a notice of controversy in response to a claim for additional benefits, or pay total benefits from the alleged "date of incapacity."

ers, and inconsistent with the goals of the Legislature and the mission of the Board to save costs, promote fairness, and ensure payment of benefits legally due. *See* 39–A M.R.S. § 151–A. Although the award may seem harsh in these particular circumstances, it has the benefit of clarity and promotes numerous goals including, as we identified in *Bridgeman,* "encourag[ing] the timely filing of a notice of controversy to facilitate the administrative process and to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under this Act." 2005 ME 38, ¶ 14, 872 A.2d at 965 (quotation marks omitted).

[¶ 26] Since we decided *Bridgeman* in 2005, the Legislature has amended 39–A M.R.S. § 205 on three occasions. *See* P.L.2007, ch. 218, § 1 (effective Sept. 20, 2007) (codified at 39–A M.R.S. § 205(4)); P.L.2009, ch. 129, §§ 5–6 (effective Sept. 12, 2009) (codified at 39–A M.R.S. § 205(3), (4)); P.L.2009, ch. 280, §§ 1–2 (effective Sept. 12, 2009) (codified at 39–A M.R.S. § 205(9)(B)). Despite this considerable legislative attention, the recent amendments to section 205 do not abrogate our holding in *Bridgeman* or supersede our interpretation of Me. W.C.B. Rule, ch. 1, § 1. The Legislature's silence in response to *Bridgeman,* particularly at a time when section 205 has otherwise undergone significant amendments, speaks volumes. The Legislature is presumed to have knowledge of our decisions, *Stockly v. Doil,* 2005 ME 47, ¶ 14, 870 A.2d 1208, 1213; *Musk v. Nelson,* 647 A.2d 1198, 1202 (Me.1994), and in the absence of evidence that it intended to modify our decision, we will not interpret a rule or statute to effect such a modification, *see Caron v. Me. Sch. Admin. Dist. No. 27,* 594 A.2d 560, 563 (Me.1991).

The entry is:

Decision of the Workers' Compensation Board hearing officer affirmed.

LEVY, J., with whom SAUFLEY, C.J., and GORMAN, J., join, concurring.

[¶ 27] I concur in the majority opinion and its conclusion that the hearing officer correctly ruled that the insurer's violation of the "fourteen-day rule," Me. W.C.B. Rule, ch. 1, § 1, requires it to pay total benefits to the employee from the date of incapacity alleged in the employee's petition. I am moved to write separately, however, because of the hearing officer's findings that not only had the insurer acted "diligently" and in "good faith" in seeking to contest the petition and preserve its rights, but also that Doucette had suffered no incapacity.

[¶ 28] Viewed through the lens of these findings, the penalty imposed in this case, in excess of $140,000, appears to be unfair, possibly punitive, and contrary to some of the policy objectives of the Workers' Compensation Act. It is beyond the authority of this Court, however, to remedy this unfairness. *See, Cf. Wentzell v. Timberlands, Inc.,* 412 A.2d 1213, 1214–15 (Me.1980) (declining to construe a provision of the Workers' Compensation Act in a manner inconsistent with its plain language in order to achieve fairness). Our review of the Board's decisions is circumscribed by the Act itself. *See* 39–A M.R.S. §§ 318, 322 (2010), *see also Guar. Fund Mgmt. Servs. v. Workers' Comp. Bd.,* 678 A.2d 578, 582–83 (Me.1996); *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 362 (Me.1994). We have already determined that the Board did not exceed its authority in promulgating Board Rule, ch. 1, § 1. *Bridgeman v. S.D. Warren Co.,* 2005 ME 38, ¶¶ 12–15, 872 A.2d 961, 965.

[¶ 29] Having promulgated the rule, the Board, as represented by its hearing officer, was not authorized to invoke equitable principles to achieve a more just

outcome. *See Hird v. Bath Iron Works Corp.,* 512 A.2d 1035, 1037–38 (Me.1986). Nonetheless, it is hard not to be left with the sense that the end result in this case is not just. The only apparent path that might lead to greater justice, at least for purposes of future cases, is for the Board to examine the circumstances and outcome in this case to determine whether further development of the fourteen-day rule is needed.

ALEXANDER, J., concurring in part, dissenting in part.

[¶ 30] I concur with the Court's analysis of the history and applicability of the "fourteen-day rule," Me. W.C.B. Rule, ch. 1, § 1. I also concur with the Court's holding that the hearing officer's finding of no incapacity as a result of the 2004 injury must be of no significance in determining the applicability of the fourteen-day rule. Were the law otherwise, there would be little incentive to respect the fourteen-day rule in close cases because there would be no effective sanction for those employers who violate the rule, but prevail on the substantive issue and secure a finding of no incapacity.

[¶ 31] I respectfully dissent from that portion of the Court's opinion that awards retroactive benefits not authorized by law and turns the benefit payments clock back to 2004, rather than beginning that benefit payments clock at the 2008 injury that preceded Doucette's petition for award. It is the 2008 injury that allegedly aggravated the prior injury and caused the incapacity, wage loss, and any medical payments at issue in this proceeding.

[¶ 32] In *Bridgeman v. S.D. Warren Co.,* 2005 ME 38, ¶ 1, 872 A.2d 961, 962, we recognized that, pursuant to the fourteen-day rule, "employers can become liable for the payment of *short-term* total incapacity benefits for failing to controvert a workers'

compensation claim within fourteen days of the receipt of that claim" (emphasis added). As *Bridgeman* also held, the date the default payments for violation of the fourteen-day rule is to begin is the date of the claimed injury and incapacity giving rise to the proceeding. *Id.* ¶ 17, 872 A.2d at 965–66. The default incapacity benefits awarded by the hearing officer here were neither "short-term," nor did they begin running from the date of the claimed injury that gave rise to this proceeding.

[¶ 33] Matthew Doucette was injured while working for Sysco in 2004. He properly reported that injury. Sysco, the responsible employer, appropriately responded, covering any medical payments and placing him on light-duty work, at the same wage, until Doucette was released to full duty. Doucette subsequently left employment with Sysco for reasons unrelated to the 2004 injury. Over the next four years, Doucette made no claim for lost wages or medical payments arising from either incapacity or medical need generated by the 2004 injury. Accordingly, this case is very different from a case, such as *Bridgeman,* where an employer does not timely respond to an initial claim of injury and incapacity.

[¶ 34] In 2008, Doucette received another injury that, he alleges, resulted in an aggravation of the 2004 injury. The aggravation claim would cause Sysco to share some responsibility for any incapacity and lost earnings resulting from the 2008 injury. The 2008 injury did not, and could not have, in any way cause lost earnings or medical payments for the four years before the 2008 injury occurred.

[¶ 35] While there is an obligation to compensate for wages lost as a result of an earlier injury that is later aggravated by another injury, causing incapacity, the previous employer's responsibility to pay wage replacement benefits cannot begin to

run until the subsequent aggravating injury has occurred. Doucette made a claim for incapacity based on the 2008 injury, which he alleged aggravated a preexisting injury. The employer failed to timely respond. Pursuant to the fourteen-day rule, the obligation to pay benefits for wage replacement began to run on the date of the aggravating injury, *Bridgeman*, 2005 ME 38, ¶ 17, 872 A.2d at 965–66, and continued until Sysco made the good faith effort to cure its violation of the fourteen-day rule, Me. W.C.B. Rule, ch. 1, § 1(2).

[¶ 36] Because, by law, the previous employer was not liable to pay wage replacement benefits resulting from aggravation of a pre-existing injury causing an incapacity until the aggravating injury and the incapacity occurred, the Workers' Compensation Board erred in awarding incapacity benefits for the period between 2004 and the date of the aggravating injury in 2008. Payments counted from the date of the 2008 injury would be the period of "short-term" total incapacity benefits for defaults in compliance with the fourteen-day rule.

[¶ 37] The Workers' Compensation Board should have awarded incapacity benefits only for the period after the date of the 2008 injury and until the employer's good faith cure of the violation of the fourteen-day rule. Thus, the order of the Workers' Compensation Board should be vacated and remanded with direction to limit incapacity payments defaulted as a result of the fourteen-day-rule violation to the period after the 2008 injury.